## THE BRIDGEPORT.

1. A steamer navigating the East River, opposite Corlaer's Hook, **New York**, by night, condemned in a collision case for injury done by her to a ship lying in a recess in the Hook, two hundred feet and more outside of the open channel, and three hundred or four hundred feet from the ordinary track of steamers; it being held to be no excuse for the collision that the steamer was rounding the Hook and going into her dock about three-quarters of a mile below; that her officers could not see in consequence of a fog which suddenly rolled up, and that they *supposed* they were far enough off the shore and far enough advanced to change their course for rounding the Hook.

2. Where a boat is fastened to the shore, and out of the proper path of vessels navigating a port, she is not bound, in the absence of harbor regulations requiring it, to keep a light on deck.

APPEAL from the Circuit Court for the Eastern District of New York.

On a September night of 1865, the ship Margaret Evans, having a night watchman on board, but no light on deck, lay at a wharf at Corlaer's Hook, on the East River side of New York. She was not lying at the front of the wharf in the open stream, but at the end or return thereof, in a rectangular recess, as if she were inside of a pier, the wharf projecting some thirty or forty feet beyond her into the river, and a large sloop of war lying outside of that. She was thus more than two hundred feet outside of the open channel, and three hundred or four hundred feet from the ordinary track of steamers passing along the East River in their usual course.

The river, which is about a mile broad here, makes nearly a right angle. Vessels from Long Island Sound come down on a southerly course to this point, and having rounded the Hook they then pursue a westerly and southwesterly course to gain the lower part of the city.

On the night referred to the steamer Bridgeport was coming down the Sound, on her regular trip from Bridgeport, Connecticut, to the city of New York, bound for her berth at Peck slip, which is about three-quarters of a mile below Corlaer's Hook. She arrived off the Houston Street ferry, in the East River, half a mile above Corlaer's Hook, about three o'clock in the morning. The night was sufficiently clear for the persons in charge of the steamer to see their location and to maintain their usual speed up to this point. But here they struck a fog bank, which, as they entered it, shut out the view of the shore. They could discern the nearest lights and hear the bells at the ferry slips. The steam was shut down and the vessel proceeded slowly on her course. The tide being flood, and pretty strong, she had to work against it; but this gave her sufficient steerage-way without necessitating much absolute speed. The vessel was making three or four miles an hour. When she passed the Grand Street ferry, only three or four hundred feet above Corlaer's Hook, the ferry lights on the New York side were observed, and the bell was distinctly heard. Neither lights nor the bells on the Williamsburg (or Long Island) side were noticed. The vessel was thus shown to be nearer to the New York than to the other shore; and must of course have been hugging the New York shore closely for so dark a night, in so crowded a place. When they saw the lights of the Grand Street ferry, the wheelsman commenced turning for the purpose of rounding the point. "We judged ourselves," he testified, "well enough off to make our way; pretty close in, but far enough to clear her." Unfortunately, they shaved the point a little too closely. In less than two minutes after passing the ferry lights, and about a minute and a half after the wheelsman began to hold up for a change of course, the bow of the steamer struck the Margaret

Evans on her starboard side, just abaft the forerigging, se-verely injuring her. Her owners accordingly libelled the Bridgeport for damages. The District Court held that there was negligence on the part of the master,

1. In not *knowing* the proper time and place when and where to round the point.

2. In commencing to turn when opposite Grand Street ferry, which he should not have done until she had passed some two hundred and sixty feet below the ferry, and

3. In drawing in too close to the New York shore.

The decree in the District Court was accordingly for the libellants; a decree which the Circuit Court affirmed. The case was now here for review.

*Mr. E. H. Owen, for the appellants:*

The court below decided the case on facts and circum-stances as they appeared *in the light of the event,* whereas they should have decided it upon the facts and circumstances as they existed, and as they appeared to the master at the time and place of the accident. The master's judgment as to the proper mode of navigating the boat had to be formed at night, in a thick fog suddenly coming upon him, when he could not see, and when the officers of the boat supposed that they were far enough off from shore and far enough advanced to change their course for rounding the Hook. No witness pretends to say that the judgment was unwisely or improp-erly formed.

The Margaret Evans was lying in harm's way, having no light on her deck. This should be regarded as a fault on her part. Even if it were not a fault, it is a circumstance to be taken into consideration in deciding whether there was any fault or negligence on the part of the steamboat.

*Mr. D. D. Lord, contra.*

Mr. Justice BRADLEY delivered the opinion of the court.

The point where the Margaret Evans was struck by the steamer was over two hundred feet outside of the open

channel or passage-way for vessels, and three or four hundred feet from the track which the steamer ought to have pursued. The latter had got that much out of her way in one and a half or two minutes, whilst running not more than five or six hundred feet. It seems almost impossible that she could have gone so far astray in so short a time, with points of observation so near at hand, without great want of skill, or great inattention to the compass and other indicia of course and position. When off the Grand Street ferry her officers must have known nearly her precise position in the river. Her deviation from the channel seems utterly inexcusable. The only excuse which her officers proffer is, that it was so dark they could not see, and they *supposed* they were far enough off from shore, and far enough advanced, to change their course for rounding the Hook.

An attempt is made, indeed, to throw the blame on the Margaret Evans herself, because she did not have a light, and because she had no anchor watch. The fact is, she had a night watchman on board, and as to a light, we think it is hardly necessary for a vessel lying at a wharf, more than two hundred feet outside of the channel, to anticipate the visit of stray steamboats in the night-time and to make provision for such an exigency. In *Culbertson* v. *Shaw*,[*] Mr. Justice McLean states the law to be: "When a boat is anchored in the path of vessels, a light is indispensable; but it is not required where the boat is fastened to the shore, especially at a place set apart for such boats." If it were shown that the local harbor regulations required it, the case might be different. But there is no proof that the harbor regulations of New York required vessels moored at a wharf, out of the track of other vessels, to carry a light; and without an express regulation to that effect the law does not make it incumbent on them to do so. In the case of *The Granite State*,[†] it was shown that the harbor regulations of New York did not make it obligatory on barges moored at a wharf to have either a light or a watch; and the colliding

---

[*] 18 Howard, 584.      [†] 3 Wallace, 310.

steamer in that case was held liable, though it was so dark that the barge could not be seen till close to her, and though at the time the steamer was seeking to avoid contact with other vessels coming out of their docks. Where the question of fault in a collision lies between a vessel at anchor, or at a wharf, out of the track of other vessels, and not derelict in duty, and a steamer navigating a channel of sufficient width for her to move and stop at pleasure—there being no unusual stress of weather or superior force to drive the latter out of her course—it was held in the case just cited that the fault, under almost any circumstances, would be held to be with the steamer. In this case we see no fault at all in the Margaret Evans. She had a competent night watchman on board, and was entitled to be considered as safe from any collision from vessels navigating the East River.

DECREE AFFIRMED WITH INTEREST AND COSTS.