## SHIELDS *v.* THE MAYOR, ALDERMEN, ETC.

*(District Court, S. D. New York.  December 19, 1883.)*

1. COLLISION—WHARVES AND PIERS—PROJECTING BOAT—NEGLIGENCE.
    The canal-boat O., consigned to pier 37, East river, arrived there at 5 A. M. The slip being nearly full, she moored along the south side of the pier, with her bows projecting 20 feet beyond it, into the river. The end of the pier was a usual place of landing passengers in the dark. About 40 minutes before sunrise the steamer M. landed for passengers, as usual, at the end of the pier, and in doing so struck the O. and did some damage, though having perceived her in time to avoid her with due care. *Held,* in the absence of any rule or regulation, that the O. had a right, under the circumstances, to moor as she did; and that the M. was chargeable with negligence in striking her.

2. SAME—CUSTOM—LIGHT WHEN MOORED.
    It further appearing that it was the custom for a boat so moored, to exhibit a light at night, though no positive rule required it, *held,* that the custom should be enforced as obligatory under such circumstances of special exposure and danger, at a usual landing-place, as a rule of reasonable precaution, and that the O. was chargeable with negligence in omitting the light until sunrise, and the damages were divided.
    The cases of *The Bridgeport,* 14 Wall. 116, and *Granite State,* 3 Wall. 311, distinguished.

In Admirality.

*J. A. Hyland,* for libelant.

*Geo. P. Andrews* and *T. B. Clarkson,* for respondents.

BROWN, J. This action was brought to recover damages for an injury to the libelant's canal-boat, James S. Oakley, on the morning of November 20, 1880, by the steam-tug Municipal, at the end of pier 37, East river, at the foot of Market street. The Oakley had arrived that morning, at 5 o'clock, with a cargo of coal consigned to that dock, and the captain, finding the slip full of boats, so that he could get no further inside, moored on the lower side of the pier, with the bows of his boat projecting about 15 or 20 feet outside of the end of the pier into the river. At 6:20 A. M. the Municipal, a tug-boat in the employ of the respondents, came down the East river and stopped at the end of the pier for the purpose of taking on board laborers, as it had been her daily custom for sometime previous. In landing at the end of the pier she struck the libelant's boat a slight blow, from which some damage arose, for which this libel was filed. Though there was some dispute as to the time of the collision, it may be taken as fixed very near the hour of 6:20, as above stated. The sun

rose that day at 6:57 and the morning was clear. Although it was not broad daylight, it was by no means dark when the Municipal came up, and the libelant's boat was perceived before the pier was reached. The tug was easily handled, and, with due care, might have been stopped in time to avoid the collision. The Municipal, therefore, cannot be exempted from responsibility. *The Granite State,* 3 Wall. 311; *The Harry,* 15 Fed. Rep. 161; *The Nebraska,* 2 Ben. 500; *The Nellie,* 7 Ben. 497.

As regards the alleged negligence of the Oakley it must be observed that there is no statute, nor custom, nor regulation of the port, which forbids vessels or canal-boats to be moored with their bows projecting beyond the ends of piers. Each case as it arises must therefore be determined according to its own circumstances, having reference to the necessities of the case arising from the particular location, its customary use and exposure to other vessels, and the obligation of the vessel thus mooring to exercise all reasonable prudence and precaution to avoid injury to herself and others in every situation.

In the case of *The Canima,* 17 Fed. Rep. 271, this court held it to be negligence in the owner of a canal-boat, after he had obtained a berth wholly within the slip, to move her partly outside for his own convenience, and leave her there unattended and exposed to the danger of collision with vessels coming to the pier. The case of *The Baltic,* 2 Ben. 452, was somewhat different. There, the tug-boat was lying at the end of the pier, with her stern projecting partly across the entrance of the ferry-slip and obstructing the entrance of the ferry-boats in a mode forbidden by law. Blatchford, J., held her in fault on the ground that she had no right to lie in that position.

In the case of *The Cornwall,* 8 Ben. 212, where the bark placed herself *without cause* in an exposed place, projecting across the end of piers, the libel was dismissed, no negligence being found in the steamship.

In the present case, I think it must be held that the canal-boat was not in the wrong in merely mooring as she did, as it appears from the evidence that she was consigned to this dock; that she could not get in further, but moored in the best manner she could on arriving, a little more than an hour previous to the collision. The captain testifies that it was not unusual for barges to moor in that manner. But he also states that when lying in that manner in the night-time he had previously been accustomed to exhibit a light. On mooring at the pier on this occasion, at about 5 o'clock, it was still night, and dark. The exhibition of a light is certainly no more than a reasonable precaution to aid in avoiding injuries. There was precisely the same reason for it in this case as in the case of a vessel at anchor in navigable waters in an exposed situation, as the end of this pier was a usual landing-place. The customary mode of passenger steamers landing at the ends of certain piers, exposes vessels mooring along the side of such piers and projecting beyond the end of the piers

to peculiar dangers, and the custom of exhibiting a light in that situation at night, referred to by the captain of the boat, ought to be held obligatory under such circumstances of special danger. This pier was not, as in the case of *The Bridgeport*, 14 Wall. 116, a place out of the usual course of navigation and landing while it was dark. It was in proof that such landings were a daily practice. In the case of *The Granite State, supra,* no light was held required upon a vessel moored across the end of the wharf, and the same was held in the case of *The Bridgeport*, where the boat lay wholly inside of the end of the wharf. The situation, however, in cases like that of *The Granite State*, where the boat is moored across the end of the wharf, is one of far less danger, and, indeed, of no special danger at all, if not projecting above or below the pier; nor was the end of the pier there customarily used for the landing of passengers, as in this case. Under circumstances of peculiar danger like this, therefore, the omission of the usual light, and the omission of the captain, who was on board, to give any notice by shouts of warning, seem to me to be such omissions of ordinary prudence and of the customary precautions as justly to charge him with contributory negligence. Wherever by the rules lights are required, they must be exhibited from sunset to sunrise. In neglecting to exhibit a light the captain in this case omitted what I am satisfied should be held to be deemed a reasonable and necessary precaution, which in this case is without excuse, as he had been previously accustomed to exhibit such a light.

I am not satisfied upon the evidence that the canal-boat was so clearly distinguished in the early dawn, and that her position was so clearly known, that the absence of such a light should be deemed immaterial. The very custom of exhibiting such a light, when a boat projects beyond the end of the pier, would naturally induce the supposition, in the absence of the light, that the boat was not close by the pier; and she lay so low upon the water that her exact position would not naturally be clearly made out by the tug in the twilight until close at hand.

For these reasons I think both must be held in fault, and the libelant should recover but half his damages, with costs. If the amount is not agreed on, a reference may be taken to compute the amount.