THE INDUSTRY.

HAMMANN v. THE INDUSTRY, etc.

(*District Court, S. D. New York.* May 4, 1886.)

COLLISION—WHARVES—PROJECTING BOOMS—EAST RIVER—TOO NEAR APPROACH.
  Where a sloop, unloading, lay along a bulk-head at the mouth of Bushwick creek, East river, with her bowsprit projecting partly across the mouth of the creek, and her boom swung out into the river, and a tug, in going into the creek when it was nearly dark, ran into the boom, *held,* upon a dispute of the facts, that it was so nearly dark as to make it negligence in the sloop to have her boom projecting in that manner, without any light or other means of warning; and also a lack of proper care in the tug to go so near to the sloop at night; and both were held in fault, and the damages divided.

In Admiralty.
*Hyland & Zabriskie,* for libelant.
*Knox & Woodward,* for claimants.

BROWN, J. On the first of December, 1884, the libelant's sloop Citizen lay along the bulk-head at the foot of Quay street, Green Point, on the northerly side of Bushwick creek, discharging a cargo of stone. Her bowsprit projected partly across the mouth of the creek, and her boom was swung out over her starboard side, and made fast by a guy. The steam-tug Industry, about dusk, came up from Pier 8, East river, with the flood-tide, to lay up for the night in Bushwick creek. In rounding to, so as to come down against the flood-tide, and to make the pier on the south side of the creek, in order to back into the creek, she ran into the Citizen's boom, and broke it, and inflicted some other damage.

The principal controversy upon the trial has been in regard to the time of day when the accident occurred. The witnesses on the part of the tug insist that it was already quite dark; and that, as there

was no light either upon the sloop or upon the boom, the boom could not be distinguished in time to avoid it. The libelant's witnesses insist that it was not yet dark; that the boom was sufficiently visible; and that the workmen were still employed in discharging stone from the sloop. There is no means of fixing the time of the occurrence with certainty. The fact that there was one sling of stone remaining to be removed seems to be substantiated; but, as the stevedore was working by the hour, it is not certain that he might not be willing to continue until it was nearly dark. The evidence leaves no doubt that the tug's lights were lighted; and that the assistant foreman went to her aid at the dock, because the workmen who would otherwise have tended her had already gone home. Without determining this point precisely, I think both vessels must be held in fault. The boom of the sloop, according to the evidence, must have extended some 15 or 20 feet from the sloop's side. It was unnecessary that it should extend so far, as the claimant's witnesses acknowledge; and it was a dangerous obstruction. From the whole drift of the evidence it is plain that if not quite dark it was quite deep dusk. It was the time when boats were likely to be coming in to lay up for the night, and a place where they were to be expected; and it was negligence in the sloop to leave her boom projecting out in such a way, and beyond what was necessary, without anything to call special attention to it. On the other hand, there was nothing that required the tug to go so near to the sloop in rounding to and making the wharf below. There was abundant room further off and no obstruction. Vessels were accustomed to discharge at the upper wharf; and I must regard it as a lack of reasonable prudence and caution to approach so near when it was too dark to see what might be about them. A state statute forbids one vessel passing another in motion nearer than 20 yards. While this is not applicable as a matter of strict law, it is applicable by analogy, in the sense that vessels under way should keep at a reasonable distance from others, to avoid the contingencies of accident, particularly at night, where there is nothing requiring a close approach; and such is the undoubted maritime obligation. The damages should therefore be divided.

The libelant testifies that he paid $150 for the repairs. A decree for half this sum may be taken, unless the claimant desires, at his own risk of any additional costs, to take an order of reference to ascertain the amount.