## THE FULDA.

### STEWART v. THE FULDA, etc.

*(District Court, S. D. New York. May 23, 1887.)*

**1. COLLISION—SLIPS—WARPS ACROSS—CUSTOM.**
Tugs accustomed to do business in private slips are chargeable with notice of the customs of the occupants, as respects breasting off, and the use of warps across the slip.

**2. SAME—CASE STATED—NOTICE—OBSTRUCTION.**
The steamer F., on arrival at her slip at Jersey City after dark, was sought to be breasted off, as usual, some 25 feet from the wharf, the wind and tide being against her. A warp or hawser was thrown across the slip, 100 feet from its entrance, to aid in the work, as usual, under such difficulties. A tug having business in the slip, shortly after, on entering at considerable speed, ran against this hawser, and carried away her pilot-house and smoke-stack. *Held,* that the steamer, in using a warp after dark, was bound to provide reasonable notice of the obstruction to other vessels having business there, and likely to come there: that the partial lighting up of the slip by the ship's lights, without any other signal or precaution, was insufficient. *Held, also,* that the tug was chargeable with knowledge of the usages of the slip, and was bound to approach it with more caution than she used; and the damages were divided.

In Admiralty.
*Hyland & Zabriskie,* for libelant.
*Shipman, Barlow, Larocque & Choate,* for claimant.

BROWN, J. On the fourth of December, 1886, after dark, between 7 and 8 P. M., as the steam-tug D. Bingham was entering the slip of the Bremen line at Jersey City, in order to take a canal-boat loaded with coal from the bulk-head to and along-side the Fulda, for the purpose of coal-

ing her, the tug ran against a hawser, which was stretched from the starboard quarter of the Fulda, lying on the southerly side of the slip, across to a spile about 90 feet distant from the outer end of the pier, on the northerly side of the slip. The collision carried away the tug's pilot-house and smoke-stack, and inflicted considerable damage, for the recovery of which this libel was filed.

The Fulda is a steamer about 450 feet long, and of about 5,000 tons burden. She arrived at the end of her pier at 6 P. M., and proceeded as usual to haul into the slip. When wholly within the slip, an endeavor was made to breast her off, as usual, some 25 feet from the southerly side of the slip, so as to admit coal-boats for the purpose of coaling her on both sides. The whole work of mooring in this manner usually occupies from an hour to an hour and a half, depending upon the wind and tide. At this time the tide was ebb, the wind N. E., and a storm approaching,—all unfavorable to her being breasted off easily. Under such circumstances, it was usual to throw lines across the slip to the northerly pier, and to haul by steam-winches upon those lines, as well as upon the mooring spars placed upon the opposite side for the purpose of breasting the vessel off, and of keeping her there. Usually, after the vessel is properly breasted off and fixed by the spars, the hawser is removed; but in rare cases, in storms, the hawser is left out over night for the purpose of better securing the vessel.

The evidence shows that in this instance the men did not succeed in breasting the vessel off as much as required, and at about half past 7 gave it up for the night,—about the time the tug came to the slip, as above stated. The claimant's witnesses testify that the men had not yet been discharged for the night; that the ship was brilliantly lighted in all parts, the steerage passengers remaining on board for the night; and that, besides various other lights, there was a large electric light forward and another aft, each of which had five burners, amounting to 100-candle power.

The libelant's tug was properly sent there by the person whose business it was to bring the canal-boats with coal along-side the ships of the line for coaling, and it was dispatched there on learning of the Fulda's arrival. The tug came up the river from below, and, as she approached the pier, slowed her engines one pier below the Fulda, and, when turning into the slip, she stopped her engines. She had a lookout properly stationed forward, but neither he nor the pilot noticed the hawser. The lookout passed under it, but it caught the pilot-house just below the roof, and carried that away, as well as the smoke-stack behind it. The tug was going with sufficient speed to pass completely beyond the line of the hawser, notwithstanding the resistance of the pilot-house and the smoke-stack.

The libelant alleges negligence in the ship, because no light was hung upon the hawser, nor any other notice or caution against danger provided by the Fulda; and because one of the men who had charge of the hawser at the bitts on the Fulda did not let go the hawser, as he might have done, when he saw the tug approaching only 150 feet distant, nor give any hail to warn the tug away. The claimants insist that the

damage arose from the tug's own fault in not observing the hawser, which it was said should have been seen in the bright light that shone across the slip, and because there was a want of reasonable care and caution in entering the slip while the Fulda was mooring, as well as for too great speed.

There is no doubt, upon the evidence, that the vessel was well, even brilliantly, lighted, and that the whole slip must have been to a considerable extent irradiated by the ship's lights. To what extent, however, this help to seeing an article like a hawser would be neutralized by the blinding effect of such lights on the pilot's sight, in approaching them on the water, I am unable to say. The libelant's witnesses testified that such lights make adjacent objects less easily seen, by blinding the eyes of the pilot. It is certain that neither the lookout nor the pilot of the tug had any thought of a hawser being stretched across the slip, and were not upon the lookout for any such obstruction. Those on board the Fulda, with their backs to the lights, could see the hawser distinctly all the way to the opposite slip, though the night was dark.

1. I cannot hold the stretching of a hawser in the night-time across the end of this slip, where tugs were in the habit of coming more or less upon the company's business, and had the right to come, without any signal light or provision for notice of any kind to warn such tugs of the danger, to be without fault. A reasonable consideration for the safety of other vessels likely to come into the slip upon legitimate business requires that reasonable notice of some kind should be provided, in order to apprise such vessels of the danger arising from any unexpected obstruction. The Fulda was chargeable with knowledge that tugs were likely to come there properly at any moment. As respects such vessels, having business in the slip, and a right to enter it, the slip is analogous to a thoroughfare, as regards the right to notice of any unusual obstruction; and I think the rules applicable to the necessary use of lines across navigable streams in the handling of vessels should be held equally applicable here, so far as respects reasonable notice and caution to other vessels expected to come there, and liable to be injured. *The Swan*, 19 Fed. Rep. 455, and cases there cited. The general rule, as respects the requirement of notice or caution against unexpected obstructions, or concealed dangers in slips, or upon highways, stands on the same principle. *Heissenbuttel* v. *Mayor*, etc., 30 Fed. Rep. 456.

I am not satisfied that the partial lighting up of the slip from the lights upon the Fulda was a sufficient or reasonable provision for the safety of other vessels coming to the slip in the night-time. The ease with which a lantern or some of the recognized signals of danger and of the necessity of caution could be maintained, or some other provision made, either for dropping the hawser, or for hailing tugs proposing to enter the slip, should make some such precautions obligatory, as held in the cases above referred to. Upon this ground I must hold the Fulda to blame.

2. The proof on the part of the Fulda, however, shows such special circumstances as should have put the tug in this case upon her guard,

and charge her with a lack of the caution that, under the circumstances, was obligatory upon her. The slip was a private slip of the claimants, used in their business only. The libelant's tug was accustomed to go there frequently, and must be held chargeable with knowledge of the claimant's custom in mooring their vessels. The proof leaves no doubt that the breasting off of the vessel some 20 or 25 feet from the dock was a constant practice; that it usually took from one to two hours after arrival; and that, when wind and tide were unfavorable, hawsers stretched across the slip were customarily used to assist the work. The tug knew, in this case, that the Fulda had but just arrived. The position of the Fulda in her slip confirmed the fact. There were abundant lights visible, as the tug approached, to show this, and to show the further fact that the work of breasting her off was still incomplete. The wind and tide were both unfavorable to the work, and the tug, notwithstanding the denials of her witnesses, must be held chargeable with knowledge of the fact that the Fulda was engaged in breasting off, and, if not at the moment actually using hawsers, was at least likely to have them stretched out, as was often done under such circumstances. The tug had no right to assume, therefore, that the slip was necessarily clear; and she should have proceeded with caution, and with at least some watch, as respects any obstruction that might be across the slip while the Fulda was breasting off. The tug gave no heed to any of these circumstances; and the fact that the men testify that they saw neither workmen nor lights shows, if that be true, that a proper lookout was not kept up. The tug ran into the slip at considerable speed, and with no attention to the special usages of that slip, or the circumstances of the occasion; and she must therefore be also held in fault, as was the tug in the case of *The Echo*, 19 Fed. Rep. 453, 455.

Both being to blame, the damages and costs are divided. A decree may be entered accordingly.