### ERIE R. CO. v. OCEANIC STEAM NAV. CO.

(District Court, S. D. New York. February 26, 1903.)

**1. SHIPPING—NEGLIGENT OBSTRUCTION OF SLIP—LIABILITY FOR INJURY TO ANOTHER VESSEL.**

A ship lying at a pier was in fault for stretching a hawser across a slip to the opposite pier in the night without any warning to other vessels having occasion to use the slip, and liable for the damage to another vessel caused by her striking the hawser without contributory fault.

**2. SAME—CONTRIBUTORY FAULT.**

The absence of a lookout on a tug while entering a slip *held* not a fault contributing to her injury by striking a hawser stretched across the slip by another vessel, and which, owing to the darkness, could not have been seen by the lookout if he had been in his proper place.

In Admiralty. Action for damages for injury to vessel.

Wilcox & Green, for libelant.

Wheeler, Cortis & Haight, for respondent.

ADAMS, District Judge. This is an action brought by the libelant to recover damages caused to its tug Shohola by collision with a hawser, which was stretched by the respondent across the entrance to the slip between piers 48 and 49 North River. The respondent was the lessee of the piers. The accident happened a little after 4 o'clock in the morning of January 8, 1902. The hawser was stretched from the respondent's steamer Celtic, lying on the northerly side of pier 48, to the other pier and was made fast so that it was an obstruction to vessels desiring to use the slip. The tug was entering the slip for the purpose of taking in tow a barge which was lying at the bulkhead. No light was exhibited on the hawser or other warning given of its presence.

There can be no doubt of the respondent's liability. It was in fault for obstructing the slip so as to prevent its safe use by vessels navi-

gating the waters in the pursuit of their business, without giving adequate warning of the obstruction. The Fulda (D. C.) 31 Fed. 351.

The tug had no lookout and the question is whether she has sufficiently excused herself for the omission. In the proper exercise of his duties, the lookout should have been located about 15 feet ahead of the pilot house, where the pilot was stationed while navigating the vessel. The lookout would have had a somewhat better view ahead than the pilot and should have been exclusively engaged in watching. Nevertheless, I think it sufficiently appears that his presence, and the proper performance of his duties, would have made no difference in the result. It was a very dark night. The hawser was about 2½ inches in diameter and could only be made out for a very short distance, when directly ahead. It struck the tug several feet above where the lookout's line of vision would have been, so it is not likely he would have seen it, even if duly vigilant, as he would not naturally expect danger from above. But if he had seen the hawser as soon as possible and given the pilot due warning, there would not have been time to stop the tug in season to avoid the danger. The hawser struck the pilot house, near the pilot, and he, though carefully watching ahead, did not see it until immediately before the contact. He then stopped and reversed the tug's engine without substantially affecting the headway of the tug before the collision, and the upper part of the pilot house was torn off. The tug, though going at reduced speed, could not have been stopped in a less distance than about 100 feet, so that any warning which could have been given by a lookout would have been useless.

Decree for the libelant, with an order of reference.