---

### THE ROMA.

#### (District Court, S. D. New York. May 27, 1905.)

SHIPPING—OBSTRUCTION OF SLIP BY LINE—NEGLIGENCE.

A steamship had been moored in one side of a slip for three days, during which time the bulkhead at the inner end of the slip had been occupied each night by a small passenger steamer making regular daily trips. On the third day the ship ran a hawser across the slip, making it fast to the pier on the other side, a few feet above the water. When the steamer came in about sunset no notice of the presence of the line was given her until she was within 100 feet, when she was shouted to from the ship and reversed, but struck the hawser and was injured before she lost headway. *Held*, that the ship was negligent in not placing a light upon the hawser or otherwise notifying the steamer of its presence, and was liable for the damage caused; that the smaller vessel was not in fault either for excessive speed or because she had no lookout, it not appearing that one could have seen the obstruction better than the master, who was at the wheel in the pilot house 12 feet from the stem.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Collision, §§ 96–102.]

In Admiralty.

Wing, Putnam & Burlingham, for libellants.

Benedict & Benedict, for claimant.

ADAMS, District Judge. This action was brought by Charles A. Macrea and Elizabeth Macrea, the owners of the Alberta M., a small steam passenger vessel, to recover the damages sustained by reason of a collision between that vessel and a line stretched across the water from the steamship Roma, lying at a wharf in the Atlantic Basin, Brooklyn, to a neighboring wharf, on the evening of the 7th day of November, 1904. Two passengers were injured and join in the action to recover damages therefor.

The Alberta was engaged in the business of carrying passengers between her landing place at India wharf in Brooklyn and Bayonne, New Jersey. She had regularly occupied the bulkhead between piers 33 and 34, which bounded the slip, for about 18 years, paying wharfage therefor. She was a screw steamer about 72 feet long and 15 feet beam, with an upper deck, the forward part of which was occupied by the pilot house. The latter was about 12 feet aft the stem. The slip was about 1000 feet long.

The Roma was a transatlantic passenger steamer of the Fabre line, about 432 feet long and 45 feet wide. She came to the wharf on the 4th of November and after that time had been lying near

the inner end of pier 33 with her bow about 40 feet from the bulkhead. Her port side was nearest to the pier. Her officers had seen the Alberta passing out of the slip in the morning and returning in the evening of each day.

On the day in question the Alberta left her pier in the basin for Bayonne at 7 o'clock A. M., carrying passengers. She left there again at 4:50 o'clock P. M., bound for her Atlantic Basin destination, with numerous passengers on board, expecting to reach there at 5:30 o'clock, but she was a little delayed in entering the gap of the basin by the presence of another vessel there and it was a few minutes later when she turned in to the slip.

The Roma, a little after 4 o'clock, had stretched the hawser, which was 6 or 7 inches in circumference, across the slip, leading from her after bitts to pier 34. The hawser was about 25 feet above the water at the ship and ran down to a few feet above the level of the water on pier 34. As the Alberta approached the line, she was shouted to to avoid it and the master at the wheel stopped and reversed the engine but not in time to avoid the hawser, which swept the upper part of the pilot house off and injured two of the passengers, who were in the room back of the pilot house.

On the day in question, it was sunset at 4:53. The end of the evening twilight was between 6:20 and 6:35 o'clock. It was becoming dark as the Alberta turned into the slip and difficulty in seeing there was increased by structures on the adjoining piers, which were about 20 feet high, and by buildings back of the bulkhead.

At the time of the accident the Roma was probably somewhat breasted off from the pier, owing to her having been moved slightly to let a coal boat, which had been moored between the steamship and the pier, pass out. The steamship had not been moved sufficiently to give any warming of the operation, so far as the hawser was concerned.

The questions in the case are: (1) Whether the Roma was guilty of negligence in obstructing the slip without giving notice of the presence of the hawser and (2) Whether the Alberta was negligent in failing to observe it in time.

It is settled that vessels stretching hawsers across slips in the nighttime without adequate warning are responsible for the damages caused thereby to careful navigators (The Fulda [D. C.] 31 Fed. 351; Erie R. Co. v. Oceanic Steam Nav. Co. [D. C.] 121 Fed. 440), and this is a stronger case for the libellants than either of those cited, inasmuch as the Alberta was well known to the Roma to be a regular occupant of the bulkhead at the head of the slip during the nights. It was especially incumbent upon the Roma, therefore, to give the Alberta notice of the presence of the hawser, when the darkness came on. It is contended by her that she did so by the warning shouts of persons on the steamer and in the vicinity and I have no doubt that such shouts were given, and, if in time, would have served the purpose. They did not, however, warn the Alberta in season. It was alleged in the original answer that the shouts were given as the Alberta rounded into the slip by a compe-

tent man stationed at the end of the pier for such purpose, but the answer was amended and this allegation was omitted. The testimony shows that the shouts were given as the Alberta was probably within about 100 feet of the hawser and too late for her to stop in time, although she was moving slowly and carefully towards her berth and reversed when they were understood. These shouts were in a foreign language, principally French, and the purport of them was not immediately grasped by the master of the Alberta, who was depending more upon his eyes than his ears, to ascertain what was ahead of him. Of course he should have been alert with his ears also, but I think he was sufficiently so. It is not at all clear that if he had reversed the engines of his boat as soon as he could reasonably have been expected to hear the first shout, the collision would have been avoided. It is urged by the steamship that as the hawser was broken, it is evident that the Alberta was moving faster than she should have been, but it appears that her headway was practically stopped at the gap and as she went ahead under one bell only, her rate of speed can not be held to be excessive. Her full speed was about 7 knots, and it is not probable that she was making more than 3½ to 4 when she observed the hawser and reversed. The hawser was a light one, less than 2½ inches in diameter, and as it was stretched across the space, it did not require much of a pressure to break it. I am constrained to hold that no sufficient warning was given her of the hawser being there. It seems that the proper signal to be given was a light on the hawser. It was dark enough to render such a light visible for some distance and it would have conveyed at once an intimation of danger which navigators would be bound to notice. I think that the Roma must be held in fault.

Whether the Alberta should be regarded as contributing to the accident is also to be determined. She was a small craft with a crew of three persons altogether and had no lookout. If her complement of men was insufficient, she is not for that reason to be excused for not having a lookout forward, if one would have been of service, but I am not able to see how the presence of a watchful person there would have averted the accident. I had occasion to consider a somewhat similar question in Erie R. Co. v. Oceanic Steam Nav. Co., supra, and concluded that any warning which could have been given by a lookout would have been useless, because if he were stationed on deck, the hawser would have been above the line of his vision. Here the hawser was probably a little lower and the darkness was not so great, but it seems that for practical purposes the same result should be reached. There is not enough variance in the cases to reach a different conclusion.

Decree for the libellants, with an order of reference.