## THE HENRY STEERS.

(District Court, E. D. New York. July 27, 1915.)

COLLISION ⬥71—MOVING AND MOORED VESSELS—FAULT.

A barge, while lying at night without lights alongside a bulkhead between 134th and 136th streets on the west side of East River, and in front of a lumber yard at which she was unloading, was struck and injured by a canal boat forming part of the tow of a tug, which was bringing it, with others, up to the south of the 136th street pier. *Held*, that the barge was not in a channel, but in a place which was virtually a slip, and was not in fault; that the tug, which had a searchlight, was in fault for bringing the tow so close to the bulkhead, where other vessels were likely to be tied up, without looking for them, and was liable for the collision.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 101; Dec. Dig. ⬥71.]

In Admiralty. Suit for collision by Joseph B. Wortendyke, owner of the barge Roger Kane, against the tug Henry Steers; Henry Steers, claimant. Decree for libelant.

George R. Allen, of New York City (Chauncey I. Clark, of New York City, of counsel), for libelant.

Charles Thaddeus Terry, of New York City, for claimant.

CHATFIELD, District Judge. The barge Roger Kane, belonging to the libelant, was moored upon the night of December 16, 1914, at a lumber yard upon the Bronx side of the East River between 135th and 136th streets. 136th street at this point extends out into a public wharf. 135th street is not cut through, and 134th street terminates alongside the ferry slips, somewhat further to the west than the bulkhead line from the 136th street pier south. The Roger Kane had been discharging lumber, and still had some on board. Her master and his wife and children were upon the vessel and asleep at the time. A deckhand was also on board, and they were aroused late at night by the shock of a collision, which brought them upon deck. The Kane was low in the water. At the time of the accident the tide was ebb, and the top of the Kane did not reach to the level of the stringpiece of the bulkhead along which she was lying. No lights were burning upon the Kane, and none of the street lamps in the neighborhood threw any light below the level of the bulkhead.

The tug Henry Steers had brought a fleet of canal boats down the East River loaded with sand, and dropped them back on the ebb tide after rounding up just off the head of the pier at 137th street. Then by a maneuver, described as a jackknife, she divided the tow, closing up the boats above 136th street along the south side of the

137th street pier, and then again pushing in and closing up the three boats at the rear of the tow along the south side of 136th street. In so doing, a corner of the last boat, as this boat was shoved bodily up toward the 136th street pier, touched the Kane, at a point about 20 feet from her bow, and inflicted such injuries to her planking that, after unloading the following day, she was taken to the flats near a dry dock in New Jersey, and after several surveys has been left in that spot as yet unrepaired.

The distance between the bow of the Kane and the south side of the 136th street pier was about 106 feet, and the greater part of this stretch is occupied by a granite or stone yard, while just at the south is the lumber yard at which the Kane was discharging. The space which would ordinarily be within the slip between 136th and 135th streets (or between 136th and 134th streets) was open from the shore bulkhead straight out into the river, while the turn of the shore at 135th street, and again at the ferry slips, toward the west, leaves a free navigable space south of the public pier at 136th street, within the pierhead line, but not actually in any plainly defined or inclosed slip.

In the ordinary handling and maneuvering of the tow, the Henry Steers did nothing out of the way or out of the ordinary. There appears to have been room enough in the free water below 136th street to perform the jackknife evolution safely and to bring the canal boats up along the south side of 136th street without coming in contact with the Kane, if the Steers had known just where she was lying.

No fault is made out in any respect, except in that the Steers did not use precautions to investigate whether any boat was occupying the dark space alongside the lumber yard and the stone yard. The Steers was possessed of a searchlight. When notice of collision was given by the deckhand of one of the boats, the captain of the Steers went around and threw his light on the Kane, but discovered neither the captain nor the deckhand. Nor was he able to see any visible injury along her side. He therefore came to the conclusion that no one was on board and that the boat had not been injured. He finished the mooring of his canal boats and went away.

From these circumstances the claimant drew the inference that the age of the Kane and her apparently weak condition indicated a deliberate intent to subject her to any danger which might make it possible to collect insurance or charge fault for damage inflicted. The case was contested upon all the issues raised by the answer, but eventually most of the facts bear out the libelant's statement of the locality, the occurrences, and circumstances of the collision.

The question resolves itself into one of law, rather than of fact. Apparently the libelant's employés were upon the boat. The boat, while old, was not in unseaworthy condition, and there is nothing to justify the charge that she was deliberately placed in a situation where she might encounter danger. The fact that she did not withstand a comparatively slight blow, even though the blow subjected her to considerable strain between the mass of the tow and the solid bulkhead, does not affect the responsibility of the Steers for striking her without previous inspection of where the Steers was placing the

boats, or of using lights to find out where they were going. The severity of the consequences of a comparatively easy contact cannot determine the responsibility therefor, although it may throw some light upon the movements of the vessels in reaching the point of contact.

The Steers cites .two lines of cases in support of the proposition that the Kane was negligent in lying alongside this bulkhead without any light to distinguish its presence. One of these lines of cases has to do with boats at anchor in or near a fairway or channel. Such cases as The Alabama (D. C.) 26 Fed. 866, The Erastus Corning (D. C.) 25 Fed. 572, and Muller v. New York, N. H. & H. R. Co. (D. C.) 144 Fed. 241, are based upon the federal statute now contained in article 9 of the Act of June 7, 1897, c. 4, 30 Stat. 98 (Comp. St. 1913, § 7882), for navigating vessels, and article 11 (Comp. St. 1913, § 7884), for boats at anchor in a channel or navigable water. Article 29 (Comp. St. 1913, § 7903) covers special circumstances where care is required. See The Wm. N. Beach (D. C.) 29 Fed. 303. These cases either place the entire responsibility for the accident upon the boat lying so as to be an obstruction to the navigation of the channel, or divide the damages between any boat which carelessly comes in contact with them and the boat which is in a dangerous place.

The other line of cases, such as The Industry (D. C.) 27 Fed. 767, The Chauncey M. Depew, 139 Fed. 236, 71 C. C. A. 362, Shields v. The Mayor, Aldermen, etc. (D. C.) 18 Fed. 748, and The Roma (D. C.) 138 Fed. 218, have to do with boats tied up at the end of a wharf, or projecting out from a wharf, or across a slip, so as to obstruct the channel of navigable water, without giving warning by some signal or lights. The claimant argues that in the present case the position of the Kane was not that of a boat in a slip, but rather of a boat next to or so close to navigable water as to show negligence by its mere presence, without lights, in circumstances known to the captain before he went to bed.

This view of the case substantially admits liability on the part of the Steers, and the most favorable construction would be a holding that both boats were responsible, with a division of damages. But it does not seem that the locality and the berth at which the Kane was lying should be considered as a channel, or even adjacent to a channel, along which boats could expect to navigate without regard for their immediate surroundings. The situation is rather like that in The Bridgeport, 14 Wall. 116, 20 L. Ed. 787, or Galveston Towing Co. v. Cuban S. S. Co., 195 Fed. 711, 115 C. C. A. 438, where no liability was found.

The berths alongside the bulkhead in front of the lumber yard and the stone yard were plainly to be used by boats moored alongside. The free water to the south of 136th street was in every sense the same as a slip, even though the south side was open, and no channel up and down the river could be carried around the corner of the 136th street pier, so as to make the boundary line of the channel the bulkhead at the shore.

It would not seem unreasonable to expect that the Steers should be careful if she swung the boats of her tow in, so close as to endanger a boat lying alongside the bulkhead, in the same way in which, if she

were passing into a slip of the usual form, she would be bound to ascertain whether a boat were lying alongside the pier upon the opposite side of the slip, and not to use the space where that boat might be lying without investigation before so doing.

Under these circumstances, the libelant must be given a decree.