Petition of **UNITED STATES DREDGING CORPORATION, as Owner of the MOTOR VESSEL NIP, for Exoneration from or Limitation of Liability.**

**No. 61 AD 221.**

United States District Court
E. D. New York.

Jan. 3, 1964.

See also D.C., 213 F.Supp. 780.

Foley & Martin, New York City, for petitioner; Stephen J. Buckley, New York City, of counsel.

Bigham, Englar, Jones & Houston, New York City, for claimant Raymond P. Scott, Inc.; Charles A. Van Hagen, Jr., and Douglas A. Jacobson, New York City, of counsel.

Dow & Stonebridge, New York City, for claimant Edward Kletter; Robert L. Mahar, New York City, of counsel.

William R. Vincent, New York City, for respondent; Alvin A. Berg, and George J. Nashak, Jr., New York City, of counsel.

BRUCHHAUSEN, District Judge.

The petitioner, United States Dredging Corporation, owner of the tug, named "Nip", seeks to limit its liability to the sum of $15,000.00, the value of the tug, pursuant to 46 U.S.C.A. § 183.

The facts established are that the petitioner owned and operated the dredge, Magic City, and three tenders, the Nip, Tuck and New Harbor. On September 25, 1960, the petitioner was engaged in dredging in the waters of Lloyd's Harbor, Huntington, New York, wherein the dredge was anchored. Moored alongside the dredge were the tugs, Nip, Tuck and New Harbor. At approximately 7 A.M. on that day the watchman, Carl Nilsen, was aboard the dredge. It was his duty among others to start the engines of the tugs and have the motors running in gear. Nilsen started all three engines and left them running in gear half speed ahead. (R. 50). These tugs were moored to the dredge by bow and stern lines. Nilsen then left the three tugs unattended with their engines running in gear, and boarded the dredge. He returned topside within two minutes and observed that the Nip was not moored to the dredge. It was noticed approximately 150 to 200 yards away, circling in the Harbor. Nilsen then boarded the Tuck and started after the runaway tug and eventually took the Nip in tow. However, the Nip prior to being taken in tow struck three vessels at anchor in the Harbor. Nilsen upon returning to the dredge examined the lines and observed that they had parted. (R. 55–56).

Wilber Peckelis, a diesel mechanic, (R. 63), was employed to service the engines on the tugs, (R. 66). He testified that a general overhaul of the Nip's engine was made in March 1960, also that it was necessary to start the engines in order to sustain the diesels at operating temperature for their efficient operation.

Any operation with a cold engine would cause varnish and carbon to form within the engines (R. 80). This condition would shorten the overhaul period (R. 82). The diesel should be running in gear and not neutral so as to prolong its life and further with the engine running in gear it would have proper injection and combustion (R. 89). The impact of this testimony indicates that the practice of running these diesels in gear was a maintenance consideration in prolonging the life or the overhaul period of the engine.

The evidence produced on this point clearly indicates that the petitioner was negligent in its practice of running simultaneously three diesels in gear at approximately half speed ahead with no one aboard the tugs. It is settled law that vessels in motion are required to keep out of the way of vessels at anchor, and the latter are without fault, unless it appears that the collision was the result of unavoidable accident. The rule is that the moving vessel must exonerate herself by showing that it was not within her power to prevent the collision by adopting any practical precautions. The Virginia Ehrman and the Agnese, 97 U.S. 309, 24 L.Ed. 890; The Granite State, 3 Wall. 310, 70 U.S. 310, 18 L.Ed. 179; The Bridgeport, 14 Wall. 116, 81 U.S. 116, 20 L.Ed. 787; The Gulf of Mexico, 2 Cir., 281 F. 77. The record clearly establishes that the petitioner offered no credible proof to come within the purview of the above rule.

The petitioner, seeking limitation of liability pursuant to 46 U.S.C.A. § 183 has the burden of proof to establish that the negligent act or conduct which occasioned the damage to the anchored vessels were without its privity or knowledge. Coryell v. Phipps, 317 U.S. 406, 409, 63 S.Ct. 291, 87 L.Ed. 363. The question to be resolved is whether an executive officer or supervisory employee, if any, occupied such a high managerial position so as to render his privity or knowledge that of the petitioner. Coryell v. Phipps, supra.

Edward J. Leifheit was vice-president in charge of production of sand and gravel and dredging on September 25, 1960. The actual work on the dredge was under his exclusive control (R. 193). Among other duties, the watchman was obliged to start the diesels and put them in gear to keep them warm (R. 205). This practice has been in effect since 1951 or 1952 (R. 206). Mr. Leifheit was in charge of hiring personnel and had an office on the dredge, Magic City, (R. 221). He knew the duties of the personnel, their daily routines together with those of the watchman (R. 222). In response to inquiries concerning the competence of a watchman starting an engine, putting it in gear, secured by two lines and then leaving the three tugs unattended, Leifheit responded that this has been the practice (R. 224).

Leifheit, as such officer of the petitioner was in complete charge of the dredging operation and its employees. He scheduled their work and instructed them in relation to their work on this project. His office was on the dredge wherefrom he conducted the operations. In summary Leifheit had actual knowledge of and acquiesced in what the employees were doing.

Liability may not be limited pursuant to the Limitation statute where the negligence is that of an executive officer, manager or superintendent whose scope of authority includes supervision over the phase of the business out of which the loss or injury occurred. Coryell v. Phipps, supra. Leifheit's position together with the scope of his authority render his privity or knowledge that of the petitioner. See also In re Petition of Du Bois' Sons Co., D.C., 189 F.Supp. 400 and the cases cited in the footnotes.

Limitation is denied and the petition is dismissed. The claimants are entitled to judgment together with interest and costs.

The foregoing shall constitute the Court's findings of fact and conclusions of law.

Settle decree on notice.