### THE ALABAMA.[2]

### HICKS and others v. THE ALABAMA.

*(District Court, S. D. Alabama. February 23, 1886.)*

COLLISION—DERRICK-BOAT MOORED TO A PIER—ABSENCE OF LIGHT—RULE 12 (SECTION 4233, REV. ST.) CONSIDERED—MISTAKEN MOVEMENT NOT NECESSARILY A FAULT IN LAW.

A derrick-boat was run into by a passing steamer. The latter vessel was elsewhere than she supposed herself to be at the time of the collision; but this error arose from the absence of any light on the derrick-boat or the pier, and not from negligence on the part of the steamer. The derrick-boat was moored to a pier, the location of which was out of the mid-channel and of the course usually pursued by passing vessels. *Held*, that a vessel cannot be said to be in fault solely on the ground that at the time of a collision she was elsewhere than she supposed herself to be. A mistake in the movements of a vessel does not necessarily imply fault as a matter of law. The absence of any light on either the pier or the derrick-boat was a violation of the statute. Skilled navigators do not always follow the main channel, especially at high water; and the statute rendering it obligatory upon the derrick-boat to carry a light, she cannot escape liability by proving that she was not in mid-channel, or that she was out of the usual course of passing vessels. *The Gipsey,* 19 How. 56, distinguished.

In Admiralty.

*Overall & Bestor* and *W. R. Nelson,* for libelants.

*George M. Duskin,* for respondent.

---

[1] Appealed to the circuit court.

[2] Reported by Theodore M. Etting, Esq., of the Philadelphia bar.

BRUCE, J. On Monday, the nineteenth day of January, 1885, the steam-boat Alabama navigating the waters of the Alabama river, in coming down the river on the south side of the channel opposite the city of Selma, ran against a derrick-boat laying, at the time, on the south side of pier No. 4, that being the south pier of a bridge then in process of construction across the river at that point, by which collision the derrick-boat was sunk, and the property upon the boat, consisting of a steam-engine, derrick, and tools, were lost, and the libelants, whose property was thus destroyed, bring this suit for damages, charging that the collision resulted from the negligent, careless, and unskillful navigating of the steam-boat.

There is some conflict of testimony as to the time when the collision occurred, but the weight of the testimony is that it was about dusk, if not fully dark. At any rate, it was after sun-down, and this suggests the question as to the use of signal or danger lights. There was no light on the derrick-boat or on the pier No. 4 at the time, and indeed there was no light on any of the piers, and there was no person on watch on the derrick-boat at the time of the collision. The hands had left shortly before, and the lights usually exposed had not yet been put up. The question, then, arises whether the libelants were required to have and maintain lights upon the derrick-boat, used, as it was at the time, on the construction of pier No. 4. Rule 12, (section 4233 of the Revised Statutes of the United States, c. 5,) under the head of "Navigation," provides:

"Coal-boats, trading-boats, produce-boats, canal-boats, oyster-boats, fishing-boats, rafts, or other water-craft navigating any bay, harbor, or river by hand-power, horse-power, sail, or by the current of the river, or which shall be anchored or moored in or near the channel or fairway of any bay, harbor, or river, shall carry one or more good white lights, which shall be placed in such manner as shall be prescribed by the board of supervising inspectors of steam vessels."

And rule 2 in the same chapter provides:

"The lights mentioned in the following rules, and no others, shall be carried in all weathers, between sunset and sunrise."

It is claimed that the derrick-boat in question is not within the terms of the statute; that it was not anchored or moored in or near the channel of the river; and that, therefore, there was no obligation upon libelants to use lights as provided in this statute. The evidence shows the base of pier No. 4 is at the low-water mark, so that at a low stage of water, or perhaps even at an ordinary stage of water, a steam-boat could not pass on the south side of pier No. 4. At this time however, the river was high, and there was from 75 to 100 feet width of water between the pier No. 4 and the south bank of the river, so that a boat could pass, and in point of fact the steam-boat Alabama did pass, on that occasion, between pier No. 4 and the south bank of the river, striking her stern, however, against the south side

of the pier, and inflicting some damage upon her, though that may have resulted from striking the derrick-boat.

Testimony is cumulated upon the point that it was not usual for steamers navigating the river at that point to pass so far to the south side of the river, and it is clear that the usual course of boats was north of the line pursued by the Alabama at the time in question, and the claim of the libelants is that the derrick-boat was not in or near the channel of the river, and that she. was moored at a point where she had no reason to expect a boat, and where the colliding steam-boat had no occasion to go, and therefore lights were not required. The derrick-boat had lines out to the shore on the south bank of the river, but she was moored to the pier, and not to the shore, and therefore the case does not fall within the rule upon which the case of *The Gipsey,* 9 How. 56, was decided, where the flat was moored to the bank of the river in a recess below the landing, and where it is said flat-boats might be expected, and where the steamer had no occasion to go. That the derrick-boat was moored at a point distant from the channel of the river, meaning the point where the main current of the water passed, is correct; but that the channel of the main current of the water in a river is to be held to be the channel of a river, in the sense of the admiralty, cannot be maintained. Skilled navigators of rivers, especially in high water, do not always follow the main current of the water around bends in the river, but run the "points," I believe it is called, and so shorten distance and avoid currents. The testimony shows that the steam-boat had taken on freight at a warehouse between one-half and one-quarter of a mile above the pier, and from that point backed out to the south portion of the river, and then headed down the river with no purpose of again stopping at Selma. Now, to say that, under such circumstances, a boat of the kind this derrick-boat was, might be moored in the river where those in charge of her might deem that a steam-boat would have no occasion to go, and therefore not be required to expose lights, is a proposition which I think cannot be maintained. I find the fact to be that the derrick-boat was moored where she should have had lights exposed as required by the statute, and, under such finding, the law is—that where there has been a breach of the statutory regulation as to lights exhibited by a vessel, she is *prima facie* in the wrong, and the burden of proof is on her to show that the want of lights did not contribute to the collision. Henry, Adm. 241, and authorities there cited; *The Oliver,* 22 Fed. Rep. 848.

But it is claimed that the cause of the collision was not the want of lights upon the derrick-boat, for that the pier was seen by witnesses who were on the shore at the time, and that the pilot on watch at the time was at fault, and did not know his position in the river, as he was required to know it, and that from carelessness or unskillfulness, or both, he was out of his course, and so ran down the derrick-boat. The court must be governed by the testimony of the officers

of the boat who were on watch as to what objects were visible or not visible at the time, rather than by the testimony of witnesses who were on the shore; and the court cannot presume that the pilot of the steam-boat Alabama had any purpose other than to clear pier No. 4, and at this point we have the testimony of the pilot himself who states that he aimed to pass on the north side of pier No. 4, but that he did not see it until he was so close to it that he could not pass, as he intended, on the north side; and that after an effort to stop his boat, he attempted to pass the pier on the south side and did so, striking the derrick-boat, which he says he did not see until he was nearly upon it. He gives as a reason why he sought to pass so near the north side of the pier that the current makes north at that point, and he held his boat south as far as he could so as to be sure to clear pier No. 3.

It is not claimed that the pilot at the wheel was not a competent pilot, or, indeed, that the steam-boat was not well officered and had a proper lookout at the time, and it may be admitted that the pilot was at fault in his knowledge as to his location in the stream; that he was, in point of fact, just before the collision took place, further to the south than he thought or intended to be,—he says as much,—but a mistake in the movement of a vessel does not necessarily imply fault as matter of law. Officers are required to have skill, and exercise good judgment, but they need not be infallible. Henry, Adm. 241; *The Pennsylvania,* 19 Wall. 126. The importance of the rule in regard to lights finds its illustration in this case; for it is clear that, if lights had been displayed so as to show the location of the derrick-boat and the pier, the steam-boat would have safely passed on the north side of the pier, and would have prevented the pilot from falling into the error which made it necessary for him to attempt passing on the south instead of the north side of the pier, as he intended. Instead of finding that the failure of the derrick-boat to display lights had nothing to do with the collision, I find it to have been the proximate cause of it.

But it is claimed that the officers of the steam-boat had actual notice, and knew that the derrick-boat was at that pier, because the steam-boat was at the wharf at Selma during a part or all of Sunday and all of Monday until sun-down, while work upon the pier in question was going on at a point in the river about opposite to where the steam-boat was laying, and near to her. Of course, the officers of the steam-boat knew of the construction of the piers of the bridge, and they might well infer, if they did not actually know, that derrick-boats were in use in the construction of the piers; but they also knew that derrick-boats were water-craft, and liable to be moved from point to point, and the evidence fails to show that the officers of the Alabama actually knew that the derrick-boat was moored at that particular place where she was struck by the Alabama.

The decree is for the respondent, and the libel is dismissed, with costs.