(November 24, 1908.)

ERNEST J. CARSCALLEN and ALBERT B. CARSCALLEN, Copartners, Doing Business Under the Firm Name of CARSCALLEN BROS., Respondents, v. COEUR D'ALENE & ST. JOE TRANSPORTATION COMPANY, LTD., a Corporation, Appellant.

[98 Pac. 622.]

PLEADING NEGLIGENCE — EXPERT TESTIMONY — NAVIGATION — SHOWING SIGNAL LIGHT—REASONABLE DILIGENCE—STATEMENT OF PILOT SUBSEQUENT TO COLLISION—MEASURE OF DAMAGE BY COLLISION—PROFITS DURING REPAIR—CONTRIBUTORY NEGLIGENCE.

1. A complaint for damages which charges the ultimate facts necessary to be established for recovery is sufficient.

2. There is no fixed and invariable rule established by which a trial judge shall determine the exact degree and amount of knowledge, experience and skill an expert shall possess before permitting him to testify before the jury. His competency to testify must be determined by the court.

· 3. The weight and credibility of the evidence of an expert witness given to the jury is to be judged solely by them, and such weight and credence will be given it by the jury as they think it justly entitled to, and if it runs counter to their convictions as to the truth of the matter in the exercise of their own judgment, they may disregard it entirely.

4. In an action for damages caused by a collision between two boats, the test of negligence is not that the pilot might have done

any one of a number of things other than what he did do under the particular circumstances and thereby avoided the accident, but rather was he negligent and careless in doing the particular thing he did do at the time and under the circumstances as they confronted him.

5. In determining the negligence of a steamboat pilot in the case of a collision, his acts and conduct must be judged in view of the dangers, emergency and conditions as they surrounded him at the time and place, when and where, the accident occurred.

6. Where the plaintiff on cross-examination of the pilot on defendant's steamer asked the witness if he did not, at a specified time and place subsequent to the collision, and in the presence of certain witnesses, say: "I did not know anything about running the 'Idaho,' and I told them so, and they forced me into it," and the witness denied ever making such a statement, and the plaintiff in rebuttal produced the persons supposed to have been present who testified over defendant's objection that the pilot had made such statement, and the action of the court in admitting such evidence is assigned as error, and it appears from the evidence in the record as to the actual facts constituting the negligence that the verdict could not have been different from what it was; *Held,* that it is unnecessary for the court to determine the admissibility of such evidence.

7. Where there is no statute, municipal ordinance, port or harbor regulation requiring the displaying of a signal light on a steamer, vessel or craft at particular times or under given circumstances, it is not negligence *per se* not to display such light, but the necessity will be a question of fact to be determined by the jury under the particular facts and circumstances of each separate case.

8. Where a vessel is moored in a place of usual and ordinary safety and where but few vessels are plying, and at a point where other vessels are not likely to be running, and out of the way of incoming and outgoing vessels, and there is no law or harbor rule or regulation requiring the displaying of a signal, it is not negligence to fail to display such light.

9. Where a combination steamboat and pile-driver is shown to have been engaged in regular work and to have had such employment as would have kept it employed until the bay in which it was working froze up, and it appears clearly and satisfactorily what its net earnings were *per diem* at the time, it is not erroneous in an action for damages caused by a collision to allow the owners of the injured vessel to recover the *per diem* shown to have been its net earnings for the number of days the vessel was being raised and was undergoing repairs.

10. Where the instructions requested by defendant on the subject of contributory negligence were involved, misleading and erroneous, and were rejected by the court, and the court on its own motion instructed the jury that in order to find for the plaintiffs they must be satisfied that the defendant caused plaintiffs' boat "to sink without any fault on the part of the plaintiffs or either of them"; *Held*, that the instruction is sufficiently favorable to defendant on the question of contributory negligence, in the absence of a request by defendant for a correct instruction on contributory negligence.

(Syllabus by the court.)

APPEAL from the District Court of the First Judicial District, for the county of Kootenai. Hon. W. W. Woods, Judge.

Action by plaintiffs for damages caused by a steamboat collision. Judgment for plaintiffs and defendant appealed. *Judgment affirmed.*

Robt. H. Elder, and Chas. L. Heitman, for Appellant.

There is no sufficient allegation of negligence or unskillfulness or misbehavior in the complaint. (Trans., fol. 1594, 1595; 6 Thompson on Negligence, sec. 7452; *San Antonio etc. R. Co. v. Stolleis* (Tex. Cr. App.), 49 S. W. 679.)

An opinion is entitled to no weight with the court or jury, and should not be admitted unless it comes from a person who has given satisfactory evidence that he is possessed of such experience, skill or science in the particular subject of inquiry as entitled his opinion to pass for scientific truth. (*Carr v. Northern Liberties*, 35 Pa. 324, 78 Am. Dec. 342; *Graney v. St. Louis etc. R. Co.*, 157 Mo. 666, 57 S. W. 276, 50 L. R. A. 153; 6 Thompson on Negligence, sec. 7753.)

If the facts of any particular inquiry can be so placed before the jury that as men of ordinary intelligence they can fully understand the matter and draw the proper inferences and conclusions therefrom, the opinions and conclusions of a witness, whether an expert or a nonexpert, should not be received. (6 Thompson on Negligence, sec. 7747; *Richardson*

*v. Eureka,* 96 Cal. 443, 31 Pac. 458; *Shafter v. Evans,* 53 Cal. 32; *Sonnefield v. Mayton* (Tex.), 39 S. W. 116.) In determining the liability for a collision, what the respective boats might have done to avoid a collision is not the proper test. (*Goslee v. Shute,* 18 How. 463, 15 L. ed. 462; *The Nevada,* 106 U. S. 154, 1 Sup. Ct. 234, 27 L. ed. 149; *The Grace Girdler,* 7 Wall. 196, 19 L. ed. 113.)

By the established principles of maritime law, a vessel that anchors where vessels are passing, or near where vessels are passing, is in fault, unless she shows at night a signal light. (*Brig James Gray v. The Fraser,* 62 U. S. 184, 16 L. ed. 106; *The St. John,* 54 Fed. 1015, 5 C. C. A. 16; *The Scioto,* Fed. Cas. No. 12,508; *The Indiana,* Fed. Cas. No. 7020; *Stiles v. Stevens,* Fed. Cas. No. 13,443; *The Clara,* 102 U. S. 200, 26 L. ed. 145.) Failure to exhibit lights in accordance with custom, though no positive rule requires a light, will render a vessel at fault. (*Shields v. Mayor etc. City of New York,* 18 Fed. 748; *The Oliver,* 22 Fed. 848; *The Alabama,* 26 Fed. 866.)

A vessel will be held at fault for failure to show a light when common prudence demands that a light should be carried. (*Carsley v. White,* 21 Pick. 254, 32 Am. Dec. 259; *Meigs v. The Northerner,* 1 Wash. Tr. 78; *The Senator,* 1 Cal. 459, 54 Am. Dec. 305; *Simpson v. Hand,* 6 Whart. 311, 36 Am. Dec. 231.)

The burden is upon the complainant to show not only that their lights were burning, but also that the weather was such that they could be seen a sufficient distance to avoid the collision. (*Florence P. Hall,* 14 Fed. 408; *The Titan,* 23 Fed. 413, 23 Blatchf. 177; *Culbertson v. Steamer Southern Belle,* 59 U. S. 584, 15 L. ed. 493.)

The measure of damage for case in collision is the injury sustained or loss of repairs. The loss of profits is too remote and conjectural. (*Finch v. Brown,* 13 Wend. 601; *The City of Alexandria,* 40 Fed. 697; *The Cayuga,* 81 U. S. 270, 20 L. ed. 828.) The measure of damage for a collision is the reasonable cost of repairing and of hiring another boat during the time of making repairs, not exceeding, at any time,

the value of the boat. (*The Baltimore,* 8 Wall. 377, 19 L. ed. 463; *Williamson v. Barrett,* 13 How. (U. S.) 101, 14 L. ed. 68; *The Granite State,* 70 U. S. 310, 18 L. ed. 179.)

In an action for damages where the complaint alleges that the injuries were caused by negligence of the defendant, and the answer charges *contributory negligence,* it is error for the court to omit all reference to this when instructing the jury. (*Gamble v. Mullin,* 74 Iowa, 99, 36 N. W. 909; *Owens v. Owens,* 22 Iowa, 274; *Hill v. Aultman,* 68 Iowa, 630, 27 N. W. 788; *Belden v. Chase,* 150 U. S. 674, 14 Sup. Ct. 264, 37 L. ed. 1218.) An instruction is not only affirmatively erroneous, but fatally defective, that did not submit to the jury the question whether the plaintiff by his negligence contributed to the loss. (*Hackford v. New York C. Ry. Co.,* 6 Lans. 381; *Chicago & A. R. Co. v. Mock,* 72 Ill. 141.)

The court should have instructed the jury that the profits accruing to the respondents by reason of work which they were prevented from doing by said collision is too remote and conjectural, and not the proper measure of damage. (*The City of Alexandria,* 40 Fed. 697.)

R. E. McFarland, for Respondents.

In actions for negligence, the plaintiff need not set out the specific acts constituting the negligence complained of or alleged, but ultimate facts. (*McLean v. City of Lewiston,* 8 Ida. 472, 69 Pac. 478; 14 Ency. Pl. & Pr. 333, 334.)

The fitness of a witness to testify as an expert is a question of fact, addressed to the sound discretion of the trial court, and such question is not reviewable on appeal, unless abuse of discretion is clearly shown. (Ency. Pl. & Pr. 747, 749). If the value of the loss of the use and services of the pile driver, during the time that respondents were prevented from operating the same, constituted profits, such profits are not remote, speculative or uncertain, and are recoverable in actions upon tort. (*The North Star,* 151 Fed. 168; *Strasburger v. Barber,* 38 Md. 103; *Marquart v. LaFarge,* 5 Duer (N. Y.), 565; 8 Am. & Eng. Ency. 2d ed., 620, 625, 626; 1 Sedgwick on Damages, 8th ed., pars. 195, 196; *Belch v. Big*

*Store Co.*, 46 Wash. 1, 89 Pac. 174; *American Bridge Co. v. Glenmore Distilleries Co.*, 32 Ky. Law Rep. 873, 107 S. W. 279; *The Heroine*, Fed. Cas. No. 6416; *New Haven Steamboat & Transp. Co. v. Vanderbilt*, 16 Conn. 420; *Williamson v. Barrett*, 4 U. S. (13 How.) 101, 14 L. ed. 68; *Oliver v. Perkins*, 92 Mich. 304, 52 N. W. 609; *Galveston City R. Co. v. Miller* (Tex. Cr. App.), 38 S. W. 1132.)

Vessels moored as the pile-driver was, out of the line of customary navigation, are not bound to show a light, and if run into and sunk by a steamer, the absence of such light will not prevent a recovery of damages. (*Ure v. Coffman*, 60 U. S. (How.) 56, 15 L. ed. 567; *Hadden v. The J. H. Rutter*, 35 Fed. 365; *City of New York v. The Express*, 48 Fed. 323.)

AILSHIE, C. J.—This is an appeal from a judgment and an order denying a motion for a new trial. The plaintiffs recovered judgment in the trial court against the defendant transportation company for $1,701.50, as damages alleged to have been incurred by reason of the company's steamboat "Idaho," colliding with and sinking the plaintiffs' combined steamboat and pile-driver. The plaintiffs specially pleaded the items of damages claimed and the jury returned a verdict for the full sum demanded by the complaint. The items of damages claimed are as follows:

Chattels and effects lost and destroyed by the
    sinking of the boat....................$381.65
Expenses incurred and paid out for raising
    the boat ..........................  544.85
Loss of profits and earnings of boat and pile-
    driver for 27 days while out of use and
    being raised and repaired, at $25 per
    day ..............................  675.00
Special injury and damage to boiler caused
    by collision ......................  100.00

The answer in the case put in issue all the material allegations of the complaint. It would be a useless task to discuss and consider the assignments of error, 65 in number, separately and in detail. We shall therefore consider only

such specific assignments as appear to us to require special attention, and we will dispose of the others generally.

There is nothing in the contention that the complaint fails to state a cause of action and is particularly defective in not properly charging negligence on the part of the defendant and its agents. The complaint stated the ultimate facts necessary to be pleaded and is sufficiently specific to enable defendant to intelligently answer and make a complete defense to the action, if it had a defense. (*McLean v. City of Lewiston,* 8 Ida. 472, 69 Pac. 478; *United States Mail Line v. McCracken,* 17 Ky. Law Rep. 1111, 33 S. W. 82.)

It is contended here that the evidence is insufficient to support the verdict. Appellant urges that there was an utter failure on the part of the plaintiffs to show negligence in running the steamer "Idaho," and that whatever negligence appears in the case is the negligence of the plaintiffs in mooring and anchoring their steamboat and pile-driver and not having a light out at the time the collision took place. We have examined this evidence with considerable care, and are satisfied that it was sufficient to justify the jury in arriving at the conclusion that the pilot on the "Idaho" was negligent in handling his boat and in running down the appellant's vessel, and that the transportation company was guilty of negligence in the selection of its pilot and was chargeable with his acts and conduct. It would be of no value or consequence to review the evidence here at any length. The general outline of the occurrence is briefly as follows:

On November 12, 1906, the respondents' combination steamboat and pile-driver was tied up at her usual landing place near the shore at Coeur d'Alene City, and, so far as we can discover from the record, inside of the line of usual and customary navigation by other vessels. It had been lying at the same place for ten or eleven days; it was fastened or tied with ropes to the dock; it did not display any light on board the night of the collision and the evidence does not disclose that it was in the habit of displaying a light when moored at this dock, nor does it show that any such custom prevailed in the Coeur d'Alene City harbor. On the evening of this same

day the "Idaho" came into port sometime after dark, and in trying to make her slip or landing struck a cluster of piling on the east side of the dock, swung around and backed in the direction of the pile-driver. The steamer backed at full speed and ran its stern into respondents' pile-driver, broke down the dock to which it was tied, and carried the pile-driver about one thousand feet out to open sea from the place where it had been moored, and there the pile-driver sunk. The evidence on the part of the owners of the "Idaho" is to the effect that a heavy wind or gale struck the steamer just before going into port and made it very difficult to manage, and resulted in driving it onto the piling as it came up to its slip at the dock. The evidence on the part of the owners of the pile-driver was to the effect that the wind that evening was not severe or at all unusual. There is also a great deal of evidence going to show that the pilot on the "Idaho" was incompetent and unskillful and unfit for duty on such vessel, and that the accident occurred by and on account of his negligence and unskillful management in operating the boat and making his landing and backing against respondents' boat. There is evidence on the part of the appellant tending to show that he was reasonably well qualified and exercised due diligence in operating and managing the boat. There is, however, to our minds, abundant evidence in the record to justify the jury in concluding that the collision occurred on account of the negligence and carelessness or incompetency of the pilot on the steamer "Idaho." Appellant takes exception to the ruling of the court in admitting the evidence of a number of so-called experts who testified as to the proper manner of handling the "Idaho" on the occasion of this collision, and of the unskillful and negligent manner in which the pilot maneuvered the boat. These witnesses were allowed to express opinions based upon the evidence given by other witnesses as to what was a proper and what an improper method of handling the boat and making her slip at the dock. These witnesses all appear to have been more or less skilled in navigation, but the particular objection was made that they did not show themselves to be skilled in the handling of

a boat of the class, size and character of the "Idaho." We do not consider the objection well founded. No very nice distinction has ever been drawn or fixed rule established by which a trial judge shall determine the exact amount of knowledge, experience and skill a so-called expert shall have before permitting him to testify before the jury. That question must be determined in the first instance by the court. (Rogers on Expert Testimony, secs. 1 to 4.) After the evidence is in, its weight and credibility is to be judged solely by the jury, and they will give it such weight as they think it is entitled to, and, indeed, if it runs counter to their convictions of truth in the exercise of their own knowledge and judgment, they may disregard it entirely. (Rogers on Expert Testimony, sec. 207; Lawson on Expert and Opinion Evidence, 182; *The Conquerer,* 166 U. S. 131, 17 Sup. Ct. 510, 41 L. ed. 947.) A jury composed of intelligent men drawn from the different callings and engagements of life will generally be able to determine from the examination of the expert the value of his opinions on the particular subject under investigation.

Considerable evidence was introduced by experts to the effect that the pilot could have maneuvered the boat in a different manner from what he did, and thereby have avoided the accident, and also to the effect that there was no occasion for backing at all, and by others showing that he might have backed directly out to open sea instead of in the direction of the pile-driver. To our minds, however, that class of evidence is of but little consequence. The test of negligence in such a case is not that the pilot might have done any one of a number of other things at the time and under the circumstances, but rather was he careless and negligent in doing the particular thing he did at the time and under the circumstances confronting him. This rule is aptly stated by the supreme court of the United States in case of *The Nevada,* 106 U. S. 154, 1 Sup. Ct. 234, 27 L. ed. 149, as follows:

"The event is always a great teacher. They might have stayed out in the river and not entered the slip; or, having entered, they might have gone to the bulkhead, and stayed

there until 'The Nevada' left.  But these possibilities are not the criterion by which they are to be judged.  The question is: Did they do all that reasonable prudence required them to do under the circumstances?  And this question, we think, must be answered in the affirmative.''

After an event has transpired or an accident occurred, it is always easy enough for persons to sit back in cool deliberation, removed from the surrounding dangers, excitement and circumstances of the occurrence and tell how a party might and should have acted in order to avoid danger or difficulty. But it is a very different thing when called upon to act under the excitement, dangers and difficulties of the occasion. The test is not what he might have done, but whether what he did in fact do was such as a reasonable man might do under the same conditions and circumstances.  The evidence in this case was sufficient, however, to justify the jury in concluding that this pilot was either incompetent for the duties of a pilot or else was careless and negligent in handling the boat, in either of which events the company would be liable for his acts and conduct.

In attempting to establish the negligence of the defendant, counsel for plaintiffs on cross-examination asked the witness Carl Falk, who was the pilot on the ''Idaho,'' whether or not on the second night after the accident, in the Lake View saloon in Coeur d'Alene City, in the presence of William Farr and Ben Woods, he did not state to Farr in speaking of the accident as follows: ''I did not know anything about running the 'Idaho' and I told them so, and they forced me into it.''  Counsel for defendant objected to this question and their objection was overruled and they assign the action of the court as error.  Plaintiffs also asked this same witness on cross-examination if he did not make a similar statement to plaintiff, Ernest Carscallen, the next morning after the accident.  Falk denied making such statement either in the Lake View saloon or to the plaintiff Carscallen.  Plaintiffs thereafter called Woods and Carscallen, each of whom testified that defendant's pilot, Falk, had made the statements that had been embodied in the questions propounded

to Falk. The defendant assigns these rulings of the court in the admission of this evidence as error, and contends that such evidence is inadmissible, for the reason that declarations made by an employee and special agent of the defendant subsequent to the accident, were not a part of the *res gestae,* and were merely the second-hand or hearsay statements of an opinion that the witness is supposed to have expressed to his employer. Counsel urge that this falls under the rule as announced in the following cases: 1 Ency. of Ev. 324-327; *Bigley v. Williams,* 80 Pa. 116; *American Steamship Co. v. Landreth,* 102 Pa. 136, 48 Am. Rep. 196; *The Roman,* 14 Fed. 62; *The Fanwood,* 61 Fed. 523; *Rogers v. McCune,* 19 Mo. 557. As we view the evidence, however, it is unnecessary for us to determine whether or not this evidence was admissible, for the reason that, if inadmissible, it only tended to corroborate the actual facts constituting the negligence, which facts are abundantly shown in the record by other evidence, and the verdict could not have been different if this evidence had been excluded.

We find no reversible error in any of the other rulings of the court on the admission or rejection of evidence. We think, however, that the objections of the appellant were well taken to the introduction of the line of evidence produced by plaintiffs to the effect that the "Idaho" could have been safely docked in her slip by various other maneuvers than that taken by the pilot. As above stated, it is not a question as to whether this could have been done safely in any other manner, but the real question is: Was the pilot negligent in pursuing the particular course he did pursue? This evidence, however, was not of such a nature as to afford grounds of reversal of the judgment.

Appellant assigns as error the action of the court in giving a number of instructions and also refusing certain instructions requested by defendant. Appellant contended all the way through the trial, and so contends here, that the plaintiffs were guilty of contributory negligence in not displaying a light on their boat and pile-driver on the night of this collision. The court instructed the jury that there is no

law in force in this state, requiring steamboats or vessels or other crafts, while moored or tied up at their usual mooring place on the shore or dock of any lake or river, to display any light or other signal. Appellant complains of this instruction, and insists that it is *per se* negligence for such a craft as plaintiffs' to be tied up at a dock where other boats are coming and going, without displaying a signal light. Many authorities are cited on this point, some of which are to the effect that it is *per se* negligence for a boat or vessel tied up at dock or in any harbor not to display a signal light after dark. Other authorities say that it is a question of fact to be determined in the particular case and with reference to the locality of the vessel. As we read and understand the rule announced by various authorities on this subject, it is this: That where the law or municipal ordinance, or rule or regulation of the port or harbor wherein the vessel is moored, requires the display of a signal light, then it is negligence on the part of the owners of the vessel not to do so, and if a collision happens when no such signal light is displayed, the vessel so in default will be chargeable with negligence. (*Brig James Gray v. The John Fraser,* 21 How. 184, 16 L. ed. 106; *Steamer Senator,* 1 Cal. 460; *Simpson v. Hand,* 6 Whart. 311, 36 Am. Dec. 231; *Bigly v. Williams,* 80 Pa. 107; *The Alabama,* 26 Fed. 866.) If, on the other hand, there is no statute, municipal ordinance, port or harbor rule or regulation requiring the display of such light, then it becomes purely a question of fact under the circumstances of the occurrence to be determined in each particular case. (*Carsley v. White,* 21 Pick. 254, 32 Am. Dec. 259.)

If a vessel is at anchor in a harbor where there are a great many steamboats, vessels and crafts, and at such a place that the vessels coming and going would be likely to collide with her unless she displayed a signal, then it would be negligence not to do so. If, on the other hand, a vessel is moored in a place where but few vessels are plying, and at a point where other vessels are not likely to be coming and going, and out of the way of incoming and outgoing vessels, then there would be no negligence in not displaying a light. (*Ure v. Coffman,*

*60 U. S. 56*, 15 L. ed. 567; *Baltimore & O. Ry. Co. v. Wheeling Transp. Co.,* 32 Ohio St. 116.)   In the case at bar, the combination steamboat and pile-driver had been anchored at this dock and at the same place for ten or eleven days and the pilot of the "Idaho" admits that he had seen the vessel standing there.   He knew the location of the dock where this vessel was tied.   He was also operating a search light on the "Idaho" as he came into the dock, and passengers on the "Idaho" saw the pile-driver.   Plaintiffs could not be charged with negligence *per se* for failure to display a light on their vessel under these circumstances.   It was purely a question of fact for the jury, and they were justified in concluding that there was no negligence on the part of the plaintiffs in this respect.

Appellant complains of the action of the court in giving plaintiffs' instruction No. 3 on the measure of damages to be awarded in the event they found in favor of the plaintiffs. The particular cause of complaint is found in that part of the instruction wherein the court told the jury that, among other items of damages, they might award plaintiffs such amount as they might be reasonably satisfied from the evidence the plaintiffs would have earned by the use of their combined pile-driver and steamboat during the period in which the boat was being raised and undergoing repairs, and being made ready for service as it had been prior to the collision.   Appellant contends that the measure of damages for the collision is the reasonable cost of raising and repairing the boat and hiring another boat during the time of making repairs, not exceeding at any time the value of the boat, and in support of this proposition cites: *The Baltimore,* 75 U. S. 377, 19 L. ed. 463; *Williamson v. Barrett,* 13 How. 101, 14 L. ed. 68; *The Granite State,* 70 U. S. 310, 18 L. ed. 179.

At first blush one would conclude that there is a great diversity of opinion as to the measure of damages in such cases, but a careful consideration of the cases and the particular statutes, ordinances or regulations to which they are referable and under which they were decided, as well as the peculiar facts of each case, tends very greatly to reconcile

the authorities and deduce from them one general rule.    It is safe to state as a generally accepted rule that in case of collision and injury to a vessel or craft, where it is shown with reasonable certainty that the vessel was either engaged in the performance of a contract, or upon such work as in all probability it would have continued at but for the accident, if damages are recovered at all, they will be measured by what is shown to have been the net earnings of the vessel at the time of the collision.    This may be shown by the books of the company, or by the direct evidence of such of its officers and agents as are in a position to testify directly and positively on that subject.    In some cases the company have hired and substituted another vessel for the one injured, and in those cases the damages for the vessel being laid off duty have been measured by the rental value of the vessel substituted.    (*The Emma Kate Ross,* 50 Fed. 845, 2 C. C. A. 55; *The Amiable Nancy,* 3 Wheat. 546, 4 L. ed. 456; *The North Star,* 44 Fed. 492; *The City of Alexandria,* 40 Fed. 697.)    It has also been said that the rental value is the proper measure of damages in cases where it appears that another vessel could have been hired to perform the same services during the period while the injured vessel was undergoing repairs.    It does not frequently occur, however, that a suitable vessel can be found that can be hired as a substitute, and in such cases resort must necessarily be had to some other method of determining the amount of damages caused by the lay-off.    This rule and its exceptions is well stated in case of *The Conqueror,* 166 U. S. 110, 17 Sup. Ct. 510, 41 L. ed. 937, wherein Mr. Justice Brown, speaking for the court, said:

"The difficulty is in determining when the vessel has lost profits and the amount thereof.    The best evidence of damage suffered by detention is the sum for which vessels of the same size and class can be chartered in the market.    Obviously, however, this criterion cannot be often applied, as it is only in the larger ports that there can be said to be a market price for the use of vessels, particularly if there be any peculiarity in their construction which limits their employment to a single purpose.

"In the absence of such market value, the value of her use to her owner in the business in which she was engaged at the time of the collision is the proper basis for estimating damages for detention, and the books of the owner showing her earnings about the time of her collision are competent evidence of her probable earnings during the time of her detention."

See, also, *The North Star,* 151 Fed. 177, 88 C. C. A. 536; *The Sanford,* 37 Fed. 151.

In this case the plaintiffs proved that they had employment at the time of the collision which netted them about $40 per day, and it was stated by one of the plaintiffs that his books would show such a profit. It was also shown that they entered immediately upon that work after the repair of the boat and continued until the bay in which they were working froze up. No attempt was made by the defendant to show either that the plaintiffs could not net $40 per day with their boat and pile-driver, or that they could not have procured work, nor did the defendant attempt to show that any other boat could have been hired for this work or the rental value of such a boat. The plaintiffs had pleaded that they could earn $25 per day and the court limited their right of recovery to that sum. Under these facts and circumstances, we are satisfied that the measurement of damages adopted in this case was correct.

Appellant also assigns as error the refusal of the court to give a number of instructions requested by defendant; some of them correctly state the law while others do not. Those correctly stating the law were given. The incorrect ones were properly rejected. The particular complaint made by appellant in this respect is that the court did not go into the question of contributory negligence as fully in his instructions as the defendant requested. There are two objections to the instructions requested by the defendant on contributory negligence; one is that they do not correctly state the law, and the second is that they are argumentative

and too much involved 'to have enlightened the jury on the subject. The jury were told, however, by the court that they must find that the collision occurred "without any fault on the part of plaintiffs or either of them" in order for plaintiffs to recover. This was more favorable to defendant than to plaintiffs. Contributory negligence is a matter of defense in this state. The burden of proving contributory negligence rests on the defendant. (*Adams v. Bunker Hill etc. Co.*, 12 Ida. 642, 89 Pac. 624, 11 L. R. A., N. S., 844; *Pilmer v. Traction Co.*, 14 Ida. 327, 125 Am. St. Rep. 161, 94 Pac. 432.) There was no attempt to prove negligence on the part of the plaintiffs in any respect except to show that no light was displayed on plaintiffs' boat at the time of this collision, and the contention was made that the failure to display a signal light was negligence *per se*. This position, as before stated, was untenable.

We find no error that would require a reversal of the judgment. Upon the whole record it appears to us that the judgment in this case is just and equitable, and is supported by a great preponderance of the evidence. The judgment will be affirmed, and it is so ordered. Costs are awarded in favor of respondents.

Sullivan, J., and Stewart, J., concur.

### ON PETITION FOR REHEARING.

(December 21, 1908.)

STEWART, J.—The appellant files a petition for rehearing in this case upon the following grounds: First, appellant contends that this court did not consider or pass upon the following instruction:

"The jury is instructed that there is no law in force in this state requiring steamboats, vessels or other crafts such as the said combination pile-driver and steamboat of the plaintiffs while moored or tied up at their usual mooring

place or on the shore or dock of any' lake or river to display any light or other signals, nor was there any such law in force in this state on the 12th day of November, 1906.''

This court did not consider this instruction in the opinion, and held that the same was not erroneous, and counsel in the petition for rehearing does not claim the instruction was erroneous, but argues that by the giving of this instruction the jury were told, in effect, that the failure to display a light or other signal was not to be considered by the jury in determining whether or not the plaintiff was guilty of contributory negligence. This instruction does not so state. It merely advises the jury that there was no law in this state at the time of the accident requiring steamboats or combination pile-drivers, moored at a place or on the shore or dock of a lake, to display any light or other signal, but the jury were not advised by this instruction that the failure to display a light was a matter they could not consider in determining whether the plaintiff was guilty of contributory negligence. The statement in this instruction in no way misled the jury. It simply advised them that the failure to display a light was not *per se* negligence. The instruction itself is not erroneous, and did not withdraw from the jury the right to consider whether the plaintiff was guilty of contributory negligence in not displaying a light. Whether the failure to display a light was negligence was a question of fact, left to the jury.

It is next complained that the court erred in its conclusion as to the rule of damages. This question is fully considered by this court in the original opinion. This court announced the rule that "in an action for damages caused by a collision to allow the owners of the injured vessel to recover the *per diem* shown to have been its net earnings for the number of days the vessel was being raised and was undergoing repairs.'' In other words, where an accident occurs and it requires time to raise the vessel and repair it and put it in the condition in which it was before the accident, the owner may recover as damages the earning capacity less expenses during

Nov. 1908.]   CARSCALLEN *v.* COEUR D'ALENE ETC. CO.   461

Opinion of the Court—Stewart, J., on Petition for Rehearing.

such time, and this we understand to be the correct rule as announced by the weight of authority.

It is next urged that this court has failed to consider Instruction No. 10, requested by the appellant, as follows:

"The Court instructs the jury that although the jury may believe from the evidence that the defendant's servants were guilty of negligence which contributed to the injury in question, still if the jury further find from the evidence that the plaintiffs were also guilty of negligence which contributed to the injury, then the plaintiffs cannot recover in this suit."

This instruction was considered by this court in connection with the other instructions, especially the instruction in which the court told the jury "they must find that the collision occurred without any fault on the part of plaintiffs, or either of them, in order for plaintiffs to recover," and this court held that the instructions, given by the court in effect covered the request made by the defendant, and that it was not error in refusing to give the instruction requested. We understand the rule to be, that the trial court does not err in refusing to give an instruction, although it states the law correctly, where the same statement of the law in effect is given to the jury in other instructions. Appellant also contends that this court overlooked the evidence which tended to prove the value of the articles lost by the sinking of the pile-driver, and that the evidence offered was not sufficient to sustain the verdict of the jury. This argument is based upon the fact that the complaint alleges that the plaintiffs lost, by the sinking of the pile-driver, personal property of the value of $381.65, while the evidence shows the value of such property to be only $321.95. An examination of the evidence discloses that the plaintiff was unable to enumerate separately many of the articles lost or to give their value when testifying as to his loss by the sinking of the pile-driver, but the witness did testify that he had a memorandum of the articles lost and that the value of the same was $381 and some cents. This, in connection with the value of the particular items given by the witness and his statement that some of the items

he was unable to enumerate or give the value, was sufficient to sustain the verdict of the jury, in the absence of any evidence to the contrary.

We have given further consideration to this case upon the petition for rehearing and are satisfied with the original opinion rendered. The petition for a rehearing is denied.

Ailshie, C. J., and Sullivan, J., concur.