## THE BRADY.

*(District Court, E. D. Pennsylvania.* May 12, 1885.)

COLLISION—SCHOONER—BARGE AT ANCHOR—DAMAGES.
Where a schooner runs into a barge at anchor the burden is on the schooner to rebut the presumption of negligence on her part; Schooner *held* liable.

In Admiralty.
*Coulston & Driver,* for libelant.
*H. R. Edmunds,* for respondent.

BUTLER, J. The burden of proof is on the respondent. Running into the libelant, lying at anchor, the respondent must repel a presumption of negligence, or make good the loss. She has sought excuse by appealing to her situation at the time, and her efforts to avoid collision. I find nothing in these circumstances, however, tending to relieve her. She knew that the William and James was aground on the southern side of the channel, or entrance to the canal, materially in the way; she knew also that boats habitually lay along the pier at the northern side of the entrance; saw as she came down the river the stack of a tug there, and should have seen the tall derrick of a barge, and have anticipated the presence of other similar vessels by her side; and, in the condition of the tide and direction of the wind, she should not have attempted to enter without careful *reconnoissance,* and ascertaining that she could do so with safety. It seems quite plain that the collision resulted from the fact that the mind of her master was so intent upon the danger threatened by the situation of the William and James that he failed to observe any precaution respecting the opposite side. Thus, with his eyes upon the grounded

schooner, he ran close to the northern side, taking in his jib, and allowing his mainsail to remain partially up, that his vessel might readily swing round into the entrance. His purpose manifestly was to keep as far as possible from the William and James.

His calculation and maneuver might have answered, but for the presence of the barges at anchor on the other side. He seems, however, to have made little calculation for the effect of tide and wind, which swung his stern too far down and brought his head around towards the northern pier. With his mainsail up and the tide ebb, this is precisely what he should have anticipated. If the situation was such that he could not enter with safety, he should not have attempted to enter. There was nothing in the way of anchoring outside, or running by. He therefore was clearly in fault.

Was the libelant also in fault? If she was, it was for lying by the pier where struck. She came through the lock at 12 o'clock the previous night, and was made fast to the tug, by means of the intervening boat, for the purpose of being towed away. This was in pursuance of the usual custom, and was unobjectionable at the time. The William and James grounded on the opposite side, a short time before the collision. The most that can be said is that she should have moved as soon after as was reasonably practicable. Her situation was such that it would seem unreasonable to hold that she should have moved before the collision occurred. Other boats lay in front, and there was not room in the rear. She was properly fastened at bow and stern, and with her companions lay as near the wharf as practicable. The allegation that her stern was swung off towards the channel is not supported by the proofs. What the respondent's witnesses say respecting this is evidently mere guessing, while the testimony upon the other side is positive and conclusive. The blow parted the stern line, and then the tide swung her round. I do not see, therefore, how she can be held to have been in fault. It is true, her master saw the respondent coming down the river, and did nothing to warn her of the situation, but he had no reason to doubt that she understood it as well as himself. Nothing further need be said. The respondent must answer for the damages.

A decree will be entered accordingly.