KEYES and others *v.* PUEBLO SMELTING & REFINING CO.

*(Circuit Court, D. Colorado.* May 13, 1887.)

1. PATENTS FOR INVENTIONS—PRELIMINARY INJUNCTION—PLAINTIFF'S LACHES.
   The ordinary rules of equity jurisprudence apply in patent cases as in others, and a temporary preliminary injunction to restrain the infringement of a patent will not be granted where the complainant has been guilty of laches, by resting for nine years without bringing suit against one who has been using the invention for that period, and where the defendant is also abundantly able to compensate the plaintiff for any damage which he may show that he has sustained.

2. SAME—ANSWER—FORMER ADJUDICATION AGAINST PATENT.
   Such temporary preliminary injunction may likewise be refused where the answer to the bill puts in issue the question of novelty, and where there has also been an adjudication in the same circuit against the validity of the patent, which adjudication, although abiding a new trial ordered by the supreme court by reason of certain errors therein, was not set aside by reason of any decision of that court concerning the validity of the patent.

3. SAME—TRIAL BY JURY.
   An application for a trial by jury, made by the defendant in such suit under the act of congress providing therefor, is to be determined in the discretion of the court; and, if it appears that the questions involved can be determined more properly by a chancellor, the application for a jury will be refused.

Letters patent No. 121,385 were granted November 28, 1881, to Winfield Scott Keyes, for an improvement in furnaces for smelting lead and other ores. An action at law was afterwards brought in the circuit court of the United States for the district of Colorado, against one Grant *et al.*, to recover damages for an alleged infringement of this patent. The defendants relied principally on the want of patentable novelty in the invention, and it was shown that an invention similar in character had been described in a publication printed in Berlin in 1831–32, called "System der Metallurgie," by one Dr. J. B. Karsten. Upon the trial of the cause the circuit judge directed the jury to find a verdict for the defendants, which was accordingly done, and judgment entered thereon. Upon writ of error to the supreme court, this direction was held to be error, on the ground that the questions involved should have been submitted to the jury, with proper instructions as to the law, and the case was reversed, and remanded with directions to grant a new trial. 118 U. S. 25, 6 Sup. Ct. Rep. 974. Before such new trial took place the plaintiff filed his bill against the present defendants, to restrain infringement of the same patent, and moved for a preliminary injunction. The defendants interposed the same defense as had been set up in said action at law. It further appeared that the defendants had been using the kind of smelter in question for nine years before the bill was filed, and that they were abundantly rich to compensate the plaintiff for any damage which he might show that he had sustained. The defendants made a counter-motion that the matter in issue be referred to a jury under the provisions of the act of congress.

*R. E. Foot,* for complainant.

*C. E. Gast* and *Thos. Macon,* for defendant.

BREWER, J. Counsel in this patent case are not here, but I will dispose of their applications, and they can ascertain from the reporter exactly what is decided. There are two motions,—one is for a preliminary injunction, the other a counter-motion for a jury. With respect to the first, the ordinary rules of equity jurisprudence apply in patent cases as in others, and a temporary preliminary injunction will not be granted unless it seems probable that the protection which the complainant's bill shows he is entitled to, compels it. If he can receive full protection without such temporary injunction, it will be refused. It will often be refused, also, where there has been great delay on a complainant's part, in consequence of which the defendant has proceeded to build up an industry based upon that patent.

Now, it appears from the answer and affidavits that this defendant is abundantly responsible for any damages which the complainants may sustain,—worth a million of dollars and more; so that, for whatever injury the complainants have sustained or may suffer from the use of these smelters by the defendant, it is amply able to compensate them. Further, the defendant and its predecessors in interest, (it is now a corporation, and its property was theretofore owned by the persons who are now its stockholders,) have used this kind of a smelter for nine years before this suit. While, of course, this would not justify their piracy, if they are pirating, yet it is certainly reason for not interfering by preliminary injunction. Further, the case stands upon bill requiring sworn answer, with such sworn answer, which certainly puts in issue the question of novelty. Still further, while the complainants have a judgment at law obtained some years ago in the circuit court of California, yet the adjudications in this circuit are for the present against their patent. A case was tried by Judge HALLETT in the circuit court, and he declared their patent void, and took the case away from the jury. The complainants appealed to the supreme court, and obtained a reversal; the supreme court not affirming the validity of the patent, but saying that the question should have been left to the jury.[1] Still, the only express adjudication in this circuit is against the validity of the patent. A judgment by consent signifies nothing. Under those circumstances, it would seem, particularly in view of the pecuniary responsibility of the defendant, improper to issue any preliminary injunction; and that application will be denied.

The defendant comes in under the act of congress, and asks that the matter be referred to a jury. I think that also ought to be denied. It is a matter of discretion under the statute, as well as under the old equity practice. It is easier for one man than for a half-dozen to come to a decision upon a question of this kind; and questions of the validity of a patent or in mechanics, or the state of the art, are ordinarily much more capable of solution by a chancellor than a jury; and, speaking for myself, I should much prefer, in a question of that kind, to determine

[1] Judgment against the defendant in the case alluded to (Keyes et al. v. Grant et al.) was entered in this court on stipulation, after the case had been redocketed on mandate from the supreme court of the United States.

it myself than to attempt to get the opinion of a jury. I have no desire to hear this case. When it comes to a hearing, I hope Judge HALLETT will take it, for I know he is very conservative on these questions of patent law. If it comes to me, I think I would rather dispose of it than ask the aid of a jury.

The application for a jury will also be refused.