HADDEN *v.* THE J. H. RUTTER, (two cases.)[1]

(*District Court, S. D. New York.* May 22, 1888.)

1. COLLISION—TUGS AND TOWS—NEGLIGENCE—ANCHORS.
    It is not reasonable prudence to undertake navigation, especially at a season of the year when violent squalls are not infrequent, without anchors adapted to the boats in use. If such anchors are not provided, it must be at the owner's risk of the natural consequences.

2. SAME.
    The steam-tug R., while towing two heavy car-floats, encountered a violent squall, which she was unable to breast, and the tow drifted towards a dock where several boats lay moored, and collided with the latter, and libelant's boats were injured. The R. had only one small anchor, wholly insufficient to hold the tow against the squall. The vessels at the dock exhibited no lights. *Held,* that the tug was solely liable for the collision.

3. SAME—LIGHTS—BOATS MOORED BY A WHARF.
    Boats moored in the usual way alongside a wharf, and not in the way of other boats. are not required to exhibit lights.

In Admiralty.

*Hyland & Zabriskie,* for libelants.

*Carpenter & Mosher,* for claimants.

BROWN, J. On the night of the 18th December, 1887, at about 11 o'clock, the steam-tug J. H. Rutter left Barclay street, with two loaded car-floats in tow, both lashed upon the port side, bound for Sixty-Eighth street, North river. When off Forty-Second street they were struck by a sudden squall, with a high wind from the northward or north-west, and thick snow. The Rutter was unable to keep her tow headed up river, though using all her force, and in going up they continued to drift towards the New York shore, until she found herself approaching the long pier at the foot of Fifty-Fifth street, along which numerous boats lay moored. She was unable to stop in time to avoid striking some of the boats, and they were knocked about so as to injure two of the libelant's boats, for which injury this suit was brought. When the Rutter left Barclay street the weather was threatening from the north-east, but the wind was not so strong as to prevent proper handling of her tow. It is plain, however, that the tow was so heavy that she was unable to cope with the squall that struck her when the wind hauled to the northward and westward; and she had only a small anchor aboard, wholly insufficient to hold so heavy a tow.

Without reference to the other charges of negligence, I cannot hold it to be reasonable prudence to undertake navigation, especially at a season

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

of the year when violent squalls are not infrequent, without anchors adapted to the boats in use, and sufficient, in case of need, to prevent them from becoming instruments of destruction to others. If suitable anchors are not provided, it must be at the owner's risk of the natural consequences.

It is urged that the boats moored alongside the Fifty-Fifth-street pier were in fault for not exhibiting lights, and the case of *The Lydia*, 4 Ben. 523, is cited, where the schooner was struck inside of the range of the open space between the Forty-Seventh and Fifty-Fifth street piers. Had these boats been, like the Lydia, lying at anchor within the line of the piers, where other boats were to be expected to pass, I should have followed that decision. I do not think it applicable to boats moored like these in the usual way alongside the piers, although there were many boats, and though this pier extended far into the river, when, as here, they were not in the way of the navigation of other boats. It is not the practice to exhibit such lights unless there are some special circumstances of danger, having reference to the ordinary navigation of other vessels. This has several times been decided in the supreme court. *The Bridgeport*, 14 Wall. 116, and cases there cited; *Shields* v. *The Mayor*, 18 Fed. Rep. 748. I do not think this situation was so exceptional as to justify the application of a different rule. To do so would certainly be imposing a duty upon such boats not hitherto understood.

There is a distressing conflict as to the nature and extent of the damages. As respects demurrage, I am satisfied that the boat, at that season, was not practically in use, and that no demurrage for detention should therefore be allowed, except while the repairs were necessarily going on. On the whole, I think it most probable that the breaks in the planks and timbers claimed by the libelant were the result of this collision, and were not old breaks. As to some other items, I am not satisfied. I allow in the case of the Chamberlain $45, with costs, and of the Seeley $107, with costs.