### In re EASTERN DREDGING CO.

### THE SCOW NO. 34.

(District Court, D. Massachusetts. June 6, 1905.)

No. 1,669.

1. SHIPPING—LIMITATION OF LIABILITY—VESSELS SUBJECT TO PROCEEDINGS.

  A scow 110 feet long, employed in carrying mud in Boston Harbor and adjacent waters, or other waters subject to the jurisdiction of admiralty courts, is a "vessel" for the purposes of admiralty jurisdiction and the maritime law, and her owner may maintain proceedings for limitation of liability on account of collision under Rev. St. §§ 4282, 4289, as amended by Act June 19, 1886, c. 421, § 4, 24 Stat. 80 [U. S. Comp. St. 1901, pp. 2943, 2945].

  [Ed. Note.—Limitation of shipowner's liability, see The Longfellow, 45 C. C. A. 387.]

2. SAME—SUFFICIENCY OF PETITION.

  A petition for limitation of liability *held* sufficient to give the court jurisdiction as against a special plea.

In Admiralty. Petition of the Eastern Dredging Company, as owner of scow No. 34, for limitation of liability.

Carver & Blodgett, for petitioner.

J. Oscar Teele, for Winnissimmet Co.

DODGE, District Judge. Under this petition for limitation of liability, the petitioner's scow No. 34, alleged to have been in collision on March 13, 1904, with the ferryboat City of Boston, has been appraised, and the usual stipulation has been given for the payment of her appraised value. Thereupon, on November 6, 1904, the monition and restraining order provided for by admiralty rule 54 were issued, and have been duly served. All parties claiming damages by reason of the collision were thereby cited to appear and prove their claims on or before March 3, 1905. The Winnissimmet Company, owner of the ferryboat, which had brought suit in the

state courts for alleged damage to its ferryboat in the collision referred to, appeared in these proceedings before March 3, 1905, but has filed no answer to the petition, nor presented any proof of its claim. It has filed on March 5, 1905, a special plea, the effect of which is to deny that the petition presents a case in which the court has jurisdiction to grant the relief prayed for. Upon this special plea a hearing has now been had. The Winnissimmet Company contends that upon the allegations of their petition the owners of the scow are not entitled to the limitation of liability provided for in Rev. St. §§ 4282, 4289, as amended by Act June 19, 1886, c. 421, § 4, 24 Stat. 80 [U. S. Comp. St. 1901, pp. 2943, 2945].

All that is to be gathered from the petition regarding the character of the scow, the waters upon which it was employed, and the nature of its employment, is as follows: Article 2 of the petition describes the scow as "an ordinary mud scow of 110 feet long and 34 feet wide." From the allegations of article 10 it is to be inferred, although this is nowhere expressly stated, that the scow was without motive power of its own, and had to be towed whenever it was moved from place to place. Article 10 alleges that the scow was "being employed by your petitioner in carrying mud from Boston Harbor to the dumping ground, in fulfillment of its contract for excavation with the United States of America," and that the scow had on board a cargo of mud at the time of the collision. The dumping ground referred to is also in article 10 stated to be "outside Boston Harbor." The value of the scow is alleged in the petition to be not over $9,000. The appraisal which has been had has since fixed the value at $5,500.

It is conceded that such a scow is a "vessel," according to the definition of that word contained in Rev. St. U. S. § 3 [U. S. Comp. St. 1901, p. 4]. The waters of Boston Harbor and the adjacent waters of Massachusetts Bay being waters within the jurisdiction of the admiralty courts, a craft of the dimensions stated in the petition, employed on and navigating those waters, as therein stated, used in transporting cargoes of mud, and therefore capable of use in transporting cargoes of other kinds, is a vessel for the purposes of admiralty jurisdiction and of the maritime law. A contract relating to the repair or employment of such a vessel is a maritime contract, damage negligently done by it to other vessels is a maritime tort, and such contracts or such torts give rise to maritime liens enforceable in admiralty against the vessel itself. The Robert W. Parsons, 191 U. S. 17–30, 24 Sup. Ct. 8, 48 L. Ed. 73; Endner v. Greco (D. C.) 3 Fed. 411, 413; The Wilmington (D. C.) 48 Fed. 566, 567; McMaster v. Dredge (D. C.) 95 Fed. 832. Such a scow is of necessity, therefore, regarded as a vessel and dealt with as a vessel by persons concerned with maritime affairs. The general provisions of the maritime law apply to her, and, since the statutes under which owners of vessels are allowed to limit their liability are enacted by Congress in amendment of the maritime law of the United States (Ex parte Garnett, 141 U. S. 1, 12, 11 Sup. Ct. 840, 35 L. Ed. 631), those statutes apply to her, unless it can be shown that such application was not intended by Congress.

The statutes in question are those sections of the Revised Statutes above referred to under which this petition is brought. They may be conveniently referred to as the "Limited Liability Act." From the time of their enactment in 1851, they have made the limitation of liability for which they provide available in general terms to "the owner of any vessel" (section 4283); but before June 19, 1886, these words were limited by the express exception, then contained in section 4289, that the act was not to apply to "the owners of any canal boat, barge or lighter, or to any vessel of any description whatsoever used in rivers or inland navigation." By the amendment of 1886, section 4289 ceased to except any vessel or any owners from the application of the act, and became instead a declaration that the act should thereafter apply "to all seagoing vessels," and also to all vessels used "on lakes or rivers or in inland navigation, including canal boats, barges and lighters." The act in its present form, therefore, applies in general terms to the owners of all vessels, without exception, and the waters referred to in section 4289 as amended, viz., seas, lakes, rivers, and inland waters, comprise all the waters to which the admiralty jurisdiction extends. The law to be administered by the courts exercising that jurisdiction is the maritime law of the country. In the exercise of its power to amend and modify that law, Congress has not only substituted in place of the exceptions formerly made from its general grant of the privilege of limiting liability, a declaration that the privilege shall now be allowed to the owners of vessels used on all the waters within admiralty jurisdiction, but it has also included by express mention the only classes of vessels which were previously so excluded. These facts seem to me to require the conclusion that all craft which are vessels for the purposes of the maritime law are vessels within the intent of the act as it now stands.

It is contended on behalf of the Winnissimmet Company:

(1) That the act does not and was not intended to apply to scows. It is true that section 4289, while it now expressly includes canal boats, barges, and lighters among the vessels to which the act is to apply, does not mention scows. No such difference, however, in character or construction, is understood to exist between a "scow" and a "barge" or "lighter" as would support the conclusion that the express inclusion of barges and lighters indicates any intention to exclude scows. For the purposes here material, a scow, and particularly a scow of the dimensions stated in the petition, seems to me a vessel of the same kind as a barge or lighter. All of them, if used as this scow was, in navigation and transportation upon the waters referred to in section 4289, are, in my opinion, vessels for the purposes of the act.

(2) That the act does not and was not intended to apply to vessels or other craft not engaged in the business of carrying merchandise or passengers or both, nor to those engaged in purely local trade, or not run on any particular route. The amendment of 1886 has, in my judgment, rendered it impossible to maintain any of these objections. There were decisions under the act, as it stood before that amendment, to the effect that it was not the intent of

Congress to grant the privilege of limiting liability except to the owners of vessel engaged in what is ordinarily understood as maritime commerce, and that a vessel not so engaged, even though she might be brought within the language of the act, was not within its intent. The Mamie (D. C.) 5 Fed. 813; Id. (C. C.) 8 Fed. 367; Simpson v. Story, 145 Mass. 497, 14 N. E. 641, 1 Am. St. Rep. 480. These decisions derived their chief support from section 4289 as it then stood. The change since made in that section requires a different view of the intent of Congress. According to a decision of this court in 1892, the change referred to has extended the act to fishing vessels, held in Simpson v. Story to be excluded. Whitcomb v. Emerson (D. C.) 50 Fed. 128. There is no expression in the act, as it now stands, to indicate that the nature of the employment in which a vessel is engaged is to be considered in determining whether or not the act is to apply to her. That question is made to depend entirely upon the waters whereon she is used. The waters whereon the petition alleges this scow to have been used are unquestionably waters within the admiralty jurisdiction, and, having held her to be a vessel within the meaning of the act, I am unable to regard the nature of her employment as in any way material. .

By the provisions of the act, when limitation is allowed, it is to be to the value of the vessel and her "freight then pending." It is argued that this indicates an intention on the part of Congress to deal in the act, even as amended, only with vessels carrying passengers or merchandise or both. In the case of a vessel carrying neither, which is claimed to be the case of this scow, no freight, it is said, could ever be pending. Such a construction of the act would prevent its application to tugboats, yet they have often been allowed to avail themselves of it. The Bordentown (D. C.) 40 Fed. 682; The Battler (D. C.) 58 Fed. 704; The S. A. McCaulley (D. C.) 99 Fed. 302; Van Eyken v. Erie R. R. Co. (D. C.) 117 Fed. 712—are instances, and others might be cited. Whaling vessels also are within the act, although it has been decided that no freight is pending on a whaling voyage. The Ontario and the Helen Mar, 2 Lowell, 40, 53, Fed. Cas. No. 10,543, affirmed on appeal, Swift v. Brownell, 1 Holmes, 467, Fed. Cas. No. 13,695. In my opinion, the words of the act referred to have no other effect than to provide that whenever freight is pending it must be surrendered.

Although the question whether the scow had any freight pending or not is regarded as immaterial for the purposes of this decision, it is not to be taken for granted at this stage of the case that she had none. Freight may have been pending, so far as the petition is concerned, which asks in the ordinary way for limitation to the value of the scow and her pending freight. The report of the appraisers that no freight was pending does not preclude further inquiry regarding the matter, if desired by any damage claimant.

(3) The remaining objections are that the collision described in the petition was such as could not have occurred without the petitioner's privity or knowledge, and that the petition does not show that a light was placed and maintained on the scow. As to the first of these objections, the petition alleges that the collision occurred

without the privity or knowledge of the owner of the scow, and neither what it elsewhere alleges nor what it does not allege regarding the circumstances of the collision warrants a determination, in advance of any hearing on the facts, that this allegation is necessarily false. As to the second objection, also, negligence on the petitioner's part being denied, the questions whether the scow was lighted or not, and, if not, whether the absence of a light was negligence on her part, must be left for determination at the trial, if then raised. The allegations of the petition are sufficient to give the court jurisdiction.

The special plea is overruled.