THE LUCILLE.

(District Court, S. D. Alabama, S. D. April 17, 1909.)

No. 1,204.

1. COLLISION (§ 73*)—VESSELS MOVING AND AT REST—PRESUMPTION AND BURDEN OF PROOF AS TO FAULT.

The fact of a collision between a vessel anchored, or at rest upon the water, or aground, and a moving vessel, being shown, the burden of proof is upon the one moving to show that it was free from fault, and it must repel the presumption of its negligence or suffer the damages incurred.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 103; Dec. Dig. § 73.*]

2. COLLISION (§ 70*)—PRECAUTIONS FOR PREVENTING COLLISIONS—VESSELS MOORED.

A vessel, when properly moored out of the usual track of moving vessels, is under no legal duty to maintain a watch nor to exhibit any light to warn approaching vessels of danger, unless the local harbor regulations require it.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 99½; Dec. Dig. § 70.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. COLLISION (§ 133*)—SUITS FOR DAMAGES—DAMAGES.

Where a launch, sunk while moored in a collision with a steamer through the fault of the latter, was so injured that it was not deemed practicable to repair her, and her market value could not be shown, damages may be fixed by taking the cost of her construction and making deduction for her deterioration and the value of the parts saved.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 287; Dec. Dig. § 133.*]

In Admiralty. Suit for collision.

Rickarby & Bonner and Goodwyn & McIntyre, for libelant.

Fitts & Leigh, Roach & Chamberlain, and Inge & Armbrecht, for claimant.

TOULMIN, District Judge. The fact of collision between a moored vessel and one moving being shown, the burden of proof is upon the one moving to show that it was free from fault; and it must repel the presumption of its negligence or suffer the damages incurred. The Brady (D. C.) 24 Fed. 300; The City of Augusta (D. C.) 30 Fed. 844; Spencer on Marine Collisions, § 94, p. 225; Id. § 120, p. 257; The Virginia Ehrman, 97 U. S. 309, 24 L. Ed. 890; The Oregon, 158 U. S. 186, 15 Sup. Ct. 804, 39 L. Ed. 943; Inland & S. Coasting Co. v. Tolson, 139 U. S. 559, 11 Sup. Ct. 653, 35 L. Ed. 270.

The situation of a vessel at rest upon the water, but not anchored, is analogous to a vessel at anchor, and the situation of a vessel aground is analogous to that of a vessel at anchor or moored, and the duty of avoiding it is wholly upon the vessel in motion. Spencer on Marine Collisions, §§ 116, 117, 120, and numerous authorities cited on page 257.

A vessel, when properly moored out of the usual track of moving vessels, is under no legal duty to maintain a watch, nor to exhibit any light to warn approaching vessels of danger, unless the local harbor regulations require it. There is no established maritime rule requiring such warning by vessels so situated. Shields v. Mayor, etc. (D. C.) 18 Fed. 748; Hadden v. The J. H. Rutter (D. C.) 35 Fed. 365; L'Hommedieu v. The Mischief (D. C.) 39 Fed. 510; The Granite State, 3 Wall. 311, 18 L. Ed. 179; The Bridge-Port, 14 Wall. 116, 20 L. Ed. 787. And no local harbor regulations have been shown to exist. Spencer on Marine Collisions, § 38.

While it would have been prudent for the position of the launch to have been designated by a light on her own account as well as on account of other boats making a landing, I find from the evidence that the want of such light was not the cause of the collision. I think the evidence shows that the launch was not wrongfully where she was, and, as she was struck by a vessel in motion, the burden of proof is upon the latter to show herself without fault. Considering all the evidence, my opinion is that this burden is not sustained. The steamboat must therefore be held liable.

The question of damages is the main controversy in this case. It is the one most difficult for me to determine, owing to the kind and character of the evidence submitted on the subject. If the launch

was not a total loss, but was capable of being repaired and restored to the condition in which she was at the time the collision occurred, the damages should be the cost necessary to repair and restore her to that condition. There is evidence that it was practicable to so repair and restore her, and that such repairs could have been made at a cost of $25, $50, $75, or $100, in the opinion of the four witnesses respectively testifying on the part of the respondents, three of whom were officers of the steamboat Lucille; but the testimony of these witnesses was vague and indefinite, and showed that it rested on no certain or definite grounds for their estimates. It was based on a casual view of the launch. There was no thorough or careful examination of her. While there was no survey of the launch (as there should have been) the libelant, who hauled her out of the water, carefully examined her and specified wherein she was damaged, testified: That she was practically a total loss; that her injuries were such that they could not have been repaired at reasonable cost; that the repairs would have cost more than, or at least as much as to build a new boat; that the opinions of all the carpenters and builders that he had to make estimates on her were to that effect; and that in fact her damaged condition was such as to amount to a total loss. The names of these carpenters and builders were not given. Their testimony was not produced, and no reason for its absence shown.

These facts, coupled with the natural bias of a witness in his own behalf, with certain allegations of fact contained in the libel which are not sustained by libelant's evidence, and other circumstances shown by the evidence, incline me to believe that the libelant's testimony of the absolute worthlessness of his boat after the collision, and the extent of his loss, is much exaggerated. If the injuries were such as amounted to a total loss, the rule of damage is her market value at the time of her destruction, if she had any market value. The Granite State, 3 Wall. 313, 18 L. Ed. 179; The Baltimore, 8 Wall. 386, 19 L. Ed. 463; The Mobila (D. C.) 147 Fed. 882. In ascertaining the market value of a vessel destroyed in a collision, the best evidence is, in general, the evidence of competent persons, who knew the vessel and the state of the market, and who testify as to its market value. While there is no criterion of market value furnished, and hence difficulty in fixing such value (as is the case here), a resort to other modes of ascertaining it is allowable. Evidence of the cost of construction is admissible; but such cost is not of itself conclusive of her actual value at the time of the collision. The whole cost should not be given as damages in assessing damages on a total loss, but evidence of the cost with deductions for deterioration may be properly resorted to in determining the value. Leonard v. Whitwell (D. C.) 19 Fed. 547; The City of Alexandria (D. C.) 40 Fed. 697; The Mobila (D. C.) 147 Fed. 882.

Libelant testified that the launch cost, in her construction, some four or five months prior to the collision, about $2,200. He claims $1,700 in his libel, thereby, I think, impliedly admitting that she was not worth what she cost, or that she had deteriorated. He testified that he saved the engine, which cost him $850, and the dynamo, which

cost $150 or $160. He said the dynamo was damaged and was of little value—real or estimated value not shown. The evidence showed that the pilot house, 20 folding chairs, some of the glass windows, and other material, such as the paddle wheels, the hull, hog chains, etc., constituting a part of the launch, were also saved. The estimated value of the last-named articles was not given, but they must have been of some value, if only as "fire wood," as claimed by the libelant, or as "junk," or for other uses.

Allowing $500 as a deduction from the cost of the boat for deterioration in her value, from the remainder deduct the value of the engine ($850) and of the dynamo ($150), aggregating $1,000, it leaves $700. There being no evidence or estimate of the value of the dynamo, I take the lowest estimate of its cost, $150. There being no evidence or estimate of the value of the other property saved, I deduct $250, which I consider sufficient to cover the same, whether its real value be more or less.

Let a decree be entered for $450.