## MOTION PICTURE PATENTS CO. v. CENTAUR FILM CO.

(District Court, D. New Jersey. October 8, 1914.)

### No. 727.

PATENTS (§ 283*)—SUIT FOR INFRINGEMENT—EQUITY JURISDICTION.

Equity has jurisdiction of a suit for infringement of a patent for a kinetoscope for taking motion picture negatives from which an unlimited number of positive pictures may be printed for exhibition purposes, although the bill was filed only two days before the expiration of the patent, where there was no laches, and the bill alleges that defendant has in its possession a large number of negatives taken with the infringing camera, and prays for an injunction to restrain their use, and may grant such injunction even after the patent has expired.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 448–450, 452; Dec. Dig. § 283.*]

In Equity. Suit by the Motion Picture Patents Company against the Centaur Film Company. On motions by complainant for preliminary injunction and by defendant to dismiss. Motion to dismiss denied, and restraining order granted.

John Robert Taylor, of New York City, for plaintiff.
Kenyon & Kenyon, of New York City, for defendant.

HUNT, Circuit Judge. Letters patent No. 589,168 were granted on August 31, 1897, to Thomas A. Edison, for certain improvements in kinetoscopes. Later, on June 10, 1902, application was made for the reissue of said letters patent No. 589,168 in two divisions, the application alleging that by reason of a defective or insufficient specification, or by reason of said Thomas A. Edison claiming as his invention more than he had a right to claim, the original letters patent were inoperative; and on September 30, 1902, letters patent 12,037 and 12,-

038 were issued to Edison. Letters patent 12,037 were for improvement in kinetoscopes, and letters patent 12,038 were for improvement in kinetoscope films. Claims 1, 2, and 3 of reissue letters patent 12,037 were held valid by the Court of Appeals of the Second Circuit, and claim 4 was held to be void. Edison v. American Mutoscope & Biograph Co., 151 Fed. 767, 81 C. C. A. 391.

By certain mesne assignments on November 16, 1907, and December 31, 1908, the plaintiff became possessed of the entire right, title, and interest in and to the invention and the reissued letters patent 12,037, and possessed of the same rights that would accrue and had accrued as if the mesne assignments had not been made. Thereafter application was made for the reissue of letters patent 12,037, alleging that the reissued letters patent were inoperative by reason of a defective or insufficient specification or by reason of Thomas A. Edison claiming as his own invention more than he had a right to claim, whereupon, on December 5, 1911, reissue letters patent No. 13,329 were issued. This reissued patent contained the three claims held valid in reissue 12,037, and in addition claims 4 and 5; these latter two claims being more limited in scope than the claims contained in reissue 12,037. Claims 1, 2, 3, and 5 of reissue 13,329 were held valid.

The greatest commercial value of reissue letters patent 13,329, which comprises the apparatus of a camera employed in the production of motion pictures, resides in the *use* of the camera to photograph scenes or objects in motion. This produces motion picture negatives, from each of which may be printed an unlimited number of positive motion pictures for use for exhibition in theaters. Licensees of the plaintiff under the reissue letters patent have been for some years past using the invention of the plaintiff in the production or manufacture of such motion picture negatives, for which the plaintiff has been paid royalties, based upon the number of running feet of motion pictures thus produced.

It is charged that subsequent to December 5, 1911, and before the commencement of this suit, the defendant wrongfully made, used, or sold, and now continues to make or use or sell, kinetoscopes or motion picture cameras, embodying the inventions set forth in reissue letters patent 13,329. By reason of the infringement, plaintiff has suffered, it is charged, and still suffers irreparable loss and injury, and has been deprived of great gains and profits which it otherwise would have received and enjoyed. Discovery of the number of motion picture cameras employing the invention that have been made and sold is prayed, and a preliminary and permanent injunction are prayed for, as well as an accounting, and the delivery into court for destruction of the pictures made by said defendant with the invention, prior to the date of the expiration of the patent, is also asked.

The bill of complaint was filed August 27, 1914. The subpœna upon the defendant was served August 29, 1914, only two days before the expiration of the patent.

On September 18, 1914, the defendant obtained a rule to show cause why the suit should not be transferred to the law side of the court

on the ground that equity did not obtain and has no jurisdiction. On September 22, 1914, defendant served notice of motion to dismiss the suit on the ground of lack of equity jurisdiction.

Plaintiff by affidavit set forth, in support of right to injunctive relief, that, to prove infringement of the patent in suit, it was necessary to see the interior mechanism of a camera being used, evidence of infringement being obtained only with the greatest difficulty and expense; that a suit under reissue 12,037 was commenced against the Centaur Film Company, a corporation of the state of New York, David Horsley, and Ludwig Erb in the Southern district of New York; that service of subpœna was not obtained against Horsley, and subsequently a new suit against Horsley alone was brought in New Jersey; that a preliminary injunction was issued; that, ten days after the suit against the New York Centaur Film Company was begun, Horsley incorporated in New Jersey another corporation with the same name, the defendant here; and that this corporation was intended by Horsley to enable continued infringement without interruption.

It further appears by affidavit that in July, 1914, the plaintiff sent a man to investigate rumors that Horsley was infringing the patent in suit; that Horsley said then that, while he was preparing to make motion pictures, he had no intention of commencing to manufacture until after the patent had expired; that on August 25th, however, McCoy, the person sent, accidentally saw a company taking pictures in Bayonne with a Pathe professional camera, and that Horsley admitted that the Centaur Company was the one using the camera; that, on receipt of McCoy's report, the present suit was instituted; that on August 31, 1914, pursuant to an arrangement, Mr. Horsley expressed to Mr. Taylor, of the Motion Picture Films Company, willingness to settle the suit amicably; that settlement failed, and the suit was pressed; that the defendant company has a capital of only $10,000 and very little assets, and that therefore a judgment for damages and profits would be of little value; that defendant has in its possession a large number of negative motion pictures made by the infringing camera before the patent in suit had expired; that to permit defendant to dispose of these pictures would work injury by depriving plaintiff of royalties; and that, because such royalties are unascertainable, a judgment for nominal damages would in all probability result.

The case of Root v. Railway Co., 105 U. S. 189, 26 L. Ed. 975, is relied upon by both the plaintiff and the defendant. A brief statement of the facts in that case may be of service here: The assignee of certain letters patent for an improvement in railroad car brakes filed his bill against the defendant over five years after the expiration of the patent, charging that the defendant had been guilty from August 6, 1869, to July 6, 1873 (the date on which the letters patent expired), of using upon its railroad cars the patented brakes, but how many the bill stated the complainant did not know and could not set forth. It was averred that the number so used was large, and that the defendant had derived, received, and realized great gains and profits therefrom in amount unknown. The bill prayed an accounting. Demurrer was filed on the grounds that the bill did not contain any

matter of equity jurisdiction, and that defendant had a plain, adequate, and complete remedy at law. The statute of limitations was also set forth as a defense. The demurrer was sustained by the lower court, and the bill was dismissed. On appeal the Supreme Court of the United States exhaustively reviewed the authorities and the course of legislation on the subject. In affirming the decision of the lower court, it said (105 U. S. 215–216, 26 L. Ed. 975):

"Our conclusion is that a bill in equity for a naked account of profits and damages against an infringer of a patent cannot be sustained; that such relief ordinarily is incidental to some other equity, the right to enforce which secures to the patentee his standing in court; that the most general ground for equitable interposition is to insure to the patentee the enjoyment of his specific right by injunction against a continuance of the infringement; but that grounds of equitable relief may arise, other than by way of injunction, as where the title of the complainant is equitable merely, or equitable interposition is necessary on account of the impediments which prevent a resort to remedies purely legal, and such an equity may arise out of, and inhere in, the nature of the account itself, springing from special and peculiar circumstances which disable the patentee from a recovery at law altogether, or render his remedy in a legal tribunal difficult, inadquate, and incomplete, and, as such cases cannot be defined more exactly, must rest upon its own particular circumstances, as furnishing a clear and satisfactory ground of exceptions from the general rule."

It is to be noted that one of the grounds claimed by the plaintiff herein as entitling it to equitable relief is the fact that the accounts are involved in such obscurity that equitable relief alone would make its remedy plain, adequate, and complete.

In concluding its opinion in the case of Root v. Railway Co., the court said:

"It does not appear from the allegations of the bill in the present case that there are any circumstances which would render an action at law for the recovery of damages an inadequate remedy for the wrongs complained of; and, as no ground for equitable relief is presented, we are of opinion that the Circuit Court did not err in sustaining the demurrer and dismissing the bill."

In Clark v. Wooster, 119 U. S. 322, 7 Sup. Ct. 217, 30 L. Ed. 392, also relied upon by both parties, the Supreme Court upheld the power of the lower court, which took jurisdiction in a case where the patent had only 15 days to run after the filing of the bill. The court said:

"As to the first point, the bill does not show any special ground for equitable relief, except the prayer for an injunction. To this the complainant was entitled, even for the short time the patent had to run, unless the court had deemed it improper to grant it. If, by the course of the court, no injunction could have been obtained in that time, the bill could very properly have been dismissed, and ought to have been. But, by the rules of the court in which the suit was brought, only four days' notice of application for an injunction was required. Whether one was applied for does not appear. But the court had jurisdiction of the case, and could retain the bill, if, in its discretion, it saw fit to do so, which it did. It might have dismissed the bill, if it had deemed it inexpedient to grant an injunction; but this was a matter in its own sound discretion, and with that discretion it is not our province to interfere, unless it was exercised in a manner clearly illegal. We see no illegality in the manner of its exercise in this case. The jurisdiction had attached, and although, after it attached, the principal ground for issuing an injunction may have ceased to exist by the expiration of the patent, yet there might be other grounds for the writ arising from the possession by the de-

fendants of folding guides illegally made or procured whilst the patent was in force. The general allegations of the bill were sufficiently comprehensive to meet such a case. But even without that, if the case was one for equitable relief when the suit was instituted, the mere fact that the ground for such relief expired by the expiration of the patent would not take away the jurisdiction and preclude the court from proceeding to grant the incidental relief which belongs to cases of that sort. This has often been done in patent causes, and a large number of cases may be cited to that effect; and there is nothing in the decision of Root v. Railway Co., 105 U. S. 189 [26 L. Ed. 975] to the contrary. Cotton Tie Co. v. Simmons, 106 U. S. 89 [1 Sup. Ct. 52, 27 L. Ed. 79]; Lake Shore, etc., Railway v. Car-Brake Co., 110 U. S. 229 [4 Sup. Ct. 33, 28 L. Ed. 129]; Consolidated Valve Co. v. Crosby Valve Co., 113 U. S. 157 [5 Sup. Ct. 513, 28 L. Ed. 939]; Thomson v. Wooster, 114 U. S. 104 [5 Sup. Ct. 788, 29 L. Ed. 105]. It is true that where a party alleges equitable ground for relief, and the allegations are not sustained, as where a bill is founded on an allegation of fraud, which is not maintained by the proofs, the bill will be dismissed in toto, both as to the relief sought against the alleged fraud and that which is sought as incidental thereto."

The court would have had power to grant a measure of the equitable relief prayed before the patent in suit expired, and the jurisdiction of equity having been assumed, even on a narrow ground, at the inception of the suit, the jurisdiction may be retained to grant a more extended relief. Equity may, however, be invoked on the ground that the court will take jurisdiction to prevent the sale of negatives made with the infringing camera before the expiration of the patent.

In Keyes v. Eureka Consol. Mining Co., 158 U. S. 150, 15 Sup. Ct. 772, 39 L. Ed. 929, in the course of its opinion, the Supreme Court said:

"No notice of an application for a preliminary injunction was given, nor any application made therefor, nor was there any showing on the pleadings or otherwise of irreparable injury to the complainants by the continued use of the invention for 29 days after the bill was filed and before the expiration of the patent. Such a contention after 17 years of use by appellee with appellants' knowledge would have been absurd, and, even if appellants had applied for a preliminary injunction before the return day, the court would have been justified in refusing to award it. Obviously the laches of appellants were such, upon their own showing, for the delay was unexplained, as to disentitle them to a preliminary injunction, as ruled by Mr. Justice Brewer, when Circuit Judge in McLaughlin v. People's Railroad (C. C.) 21 Fed. 574, and by Judge Blodgett in American Cable Railway Co. v. Chicago City Railway Co. (C. C.) 41 Fed. 522. See, also, Keyes v. Pueblo Smelting Co. (C. C.) 31 Fed. 560. This record discloses that the invention had been used for more than 17 years with the knowledge and assent of appellants and without any complaint on their part, except that appellee had not paid royalties after complainants quit its employment. This being so, the case clearly falls within Root v. Railway Co., 105 U. S. 189 [26 L. Ed. 975], Clark v. Wooster, 119 U. S. 322 [7 Sup. Ct. 217, 30 L. Ed. 392], and Lane & Bodley Co. v. Locke, 150 U. S. 193 [14 Sup. Ct. 78, 37 L. Ed. 1049], and the decree was fully justified."

In the case just cited it will be observed the question of laches was involved, but in the case at hand that principle is not applicable. This suit was filed soon after the discovery of the infringement; the slight delay in the proceedings being due, apparently, to the suggestions of the defendant that a satisfactory settlement might be reached without resort to the courts. If the facts set forth are true, plaintiff would seem to be entitled to equitable relief, if for no other purpose than to restrain defendant from selling, leasing, or in any manner disposing of any motion picture or photographic negative produced by taking

pictures with the camera in suit. It is well held that the making of articles which infringe a patent during the existence of the monopoly which is created by that patent is in violation of the patent law, and infringing articles so made during the life of a patent cannot lawfully be sold after its expiration. Underwood Typewriter Co. v. Elliott-Fischer Co. (C. C.) 156 Fed. 588. It follows that the articles produced by an infringing apparatus may not be sold after the expiration of a patent, if they have in fact been made prior to the expiration of the patent.

The restraint of the sale of these negatives would make fitting the exercise of equitable jurisdiction. Otherwise plaintiff's remedy would not be plain, adequate, and complete.

Defendant's motion to dismiss plaintiff's bill is overruled. Plaintiff may have a temporary restraining order.