## THE BANNER.

### (District Court, S. D. Alabama. April 24, 1915.)

### No. 1457.

1. COLLISION ⊙⟳74—MOVING AND STATIONARY VESSELS—PRESUMPTION OF FAULT.

   A moving vessel is prima facie in fault for a collision with one which is anchored or moored.

   [Ed. Note.—For other cases, see Collision, Cent. Dig. § 104; Dec. Dig. ⊙⟳74.]

2. COLLISION ⊙⟳77—MOVING AND STATIONARY VESSELS—WATCHMAN—NECESSITY.

   A vessel, properly moored and out of the usual track of moving vessels, is not bound to maintain a watch, unless local harbor regulations or custom require it.

   [Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 140-149; Dec. Dig. ⊙⟳77.]

3. COLLISION ⊙⟳123—SUIT FOR DAMAGES—BURDEN OF PROOF.

   To authorize recovery in a collision case, the libelant has the burden of proving fault or negligence on the part of the other vessel.

   [Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 259-261; Dec. Dig. ⊙⟳123.]

4. COLLISION ⊙⟳74—DRIFTING AND MOORED VESSELS—INSCRUTABLE CAUSE.

   A barge, without motive power and with no one on board, broke from her mooring at a pier in the night and was drifted by the tide against another moored vessel, causing her injury. There was evidence that the barge was in excellent condition and that she was properly moored and in a proper place. There was no storm, nor any evidence to show definitely how she came to be adrift. *Held*, that the evidence as to the manner in which she was moored was sufficient to overcome the presumption of fault arising from the collision itself, which must be attributed to a cause that was inscrutable, and for which no recovery could be had.

   [Ed. Note.—For other cases, see Collision, Cent. Dig. § 104; Dec. Dig. ⊙⟳74.]

In Admiralty. Suit for collision by Evans Wood, master of the schooner Dora Allison, against the barge Banner. Decree for claimant.

Rickarby & Austill, of Mobile, Ala., for libelant.

Hanaw & Pillans, of Mobile, Ala., for claimant.

TOULMIN, District Judge. [1] "Vessels in motion are required to keep out of the way of a vessel at anchor, if the latter is without fault, unless it appears that the collision was the result of inevitable accident; the rule being that the vessel in motion must exonerate herself from blame by showing that it was not in her power to prevent the collision by adopting any practicable precautions." The Virginia and the Agnese, 97 U. S. 309, 24 L. Ed. 890; In re D. H. Miller, 76 Fed. 877, 878, 22 C. C. A. 597; The Lucille (D. C.) 169 Fed. 719. The court in the D. H. Miller Case said that Lord Esher said, referring to the duties of a ship navigating with reference to one at anchor, that "The one ship ought to be under perfect command, and therefore able to get out of the way of the other ship, if she sees her; and the other is a helpless thing, which cannot do anything."

A vessel under way is prima facie at fault for a collision with a vessel at anchor or moored. The vessel under way is bound to keep clear of another at anchor. This rule applies, if it is possible for the vessel under way, with safety to herself, to avoid a collision. The Director (D. C.) 180 Fed. 606–609; The D. H. Miller, supra.

⊙⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The barge Banner, the vessel involved in this case, was unquestionably in motion at the time of its collision with the Dora Allison, which was moored to the north side of the slip of the Hieronymous Docks. Said barge had no motive power aboard of her, and was not being navigated or propelled by any motive power other than the tide, so far as the evidence in the case showed. She was simply drifting, or being carried along by the tide. She had no crew or any person on her to exercise command or control over her. There was no one on her to see the schooner, even if the latter had had a light exhibited, which the evidence showed she did not have. So it appears the barge floated along until it reached said schooner and collided with her in some unaccountable way, inflicting the damage claimed. In the collision, it appears to have turned over, as it was found next morning near the schooner in that condition.

The collision was shown to have occurred about midnight, or between 12 and 1 o'clock. If there had been a person on the barge, and if he could have seen the schooner, he would have been absolutely powerless to have avoided the collision. A "scow was adrift, without any one on board of her, which, of course, threw on her the burden of showing why she was adrift, and made out a prima facie case. of negligence. * * * There were no lights; but, as she was moored to the wharf, this did not charge her with fault. * * * The scow would not have been adrift if she had been properly moored. This was sufficient to charge her owners with negligence." In re Eastern Dredging Co. (D. C.) 138 Fed. 942; Id. (D. C.) 159 Fed. 541; In re Eastern Dredging Co., 162 Fed. 860, 89 C. C. A. 550.

[2] The fact of collision between a moored vessel and one moving being shown, the burden of proof is on the moving vessel to show that it was free from fault; and it must repel the presumption of its negligence. The Lucille (D. C.) 169 Fed. 719, 720. A vessel, when properly moored and out of the usual track of moving vessels, is under no legal duty to maintain a watch, * * * unless the local harbour regulations require it. The Lucille, supra. No proof of such regulations here.

"No negligence to leave a scow in a slip tied up to a pier without a watchman, there being no custom to keep one in such case." The Kathryn B. Guinan, 176 Fed. 301, 99 C. C. A. 639. No such custom shown here. "Acts of negligence, which do not contribute to the accident as a proximate cause, do not render a ship liable." The Curtin, 217 Fed. 247, 133 C. C. A. 519; The Oregon, 158 U. S. 186, 15 Sup. Ct. 804, 39 L. Ed. 943; The Lord O'Neill, 66 Fed. 77, 13 C. C. A. 337.

Where evidence is so conflicting, or so vague and uncertain, that it is impossible to determine to what direct and specific acts a collision is attributable, it is a case of damage arising from a cause that is inscrutable, and under the settled modern rule in this country there can be no recovery or partial recovery therefor. The Jumna, 149 Fed. 171–173, 79 C. C. A. 119. "If damage is done by a vessel adrift, her owner is allowed to show affirmatively, if he can, that her drifting was the result of inevitable accident, or a vis major which human

skill and precaution * * * could not have prevented." In re Eastern Dredging Co. (D. C.) 159 Fed. 541, supra.

[3] Negligence is an essential to recovery of damages in collision cases. The mere happening of a collision does not give rise to a right of action for damages resulting therefrom, except in those cases where, under the navigation rules, one vessel is presumed to be in fault until she exonerates herself. Even in those cases the right of recovery is based, not upon mere collision, but upon the presumption of negligence.

[4] A collision may occur without the fault of either one of the two vessels. In this case it is claimed to have been the fault of the barge, which collided with the schooner. A collision may happen without blame being imputable to either party, as where the loss or damage is occasioned by a storm or other vis major, or where the collision occurs exclusively from natural causes and without any negligence on the part of either party. In those cases the misfortune must be borne by the party on whom it happens to fall. The rule is that the loss must rest where it fell, as no one is responsible for an accident which was produced by causes over which human agency could exercise no control. No one was responsible if the accident was inevitable. If its occurrence may with reason be referred to a sudden and extraordinary strain, or to a latent undiscovered defect in a rope, or the operation of both the causes, whether occasioned by either or both, it was inevitable. Hughes on Admiralty, page 270; Pars. Shipping and Admiralty, page 525.

Two of the witnesses in this case, who on the day after the accident visited the location and viewed the sunken barge and the wharf and piling thereof, where the barge had been moored, found signs and marks especially of paint on one of the piles, which suggested the theory that the barge had been carried by the rising tide onto the top of the pile referred to, and hung there until the ebb tide set in, and by the falling tide had been subjected to a severe strain, such as to part one of the lines with which the barge was moored, and to cause the other line, with which the barge was tied to the stringer on the wharf, to break said stringer, and thus the barge was released from its moorings. Partin, one of the libelant's witnesses, who had moored the barge at the place from which she had broken loose, expressed the opinion that she had turned over at the time and place she broke away from her moorings. He testified that he moved the barge from her mooring on the south side of the slip, where the owner, by its employés and servants, had moored her the day before, and subsequently, on the afternoon of the same day, he (the witness) moved her to the north side of the slip, and there moored her as hereinabove stated. He testified that she was properly moored and in a proper place.

The evidence was that the removal of the barge by Partin was without the knowledge or consent of her owner. The evidence further was that the barge was not only seaworthy, but was in an unusually good condition, did not leak more than is common with barges in first-class condition, and that on the night of the accident, as late as 8 or 9 o'clock, when the watchman examined her before leaving her for the night,

she did not have exceeding an inch, if as much, of water in her. The evidence also was that she was properly loaded with coal. She was loaded in the same manner as she had frequently been before and since the accident.

The master of the schooner testified that, in his opinion, it was about 12 o'clock at night when the barge collided with his schooner, falling across just in front of the bow of his vessel, breaking and carrying away a part of the jibboom, bowsprit, and other rigging, and turning over and sinking, bottom up, under the starboard bow of the schooner. If the barge had turned over and sunk at the place where she broke away from her mooring, which the evidence shows was some 75 feet from the place where the schooner was moored, it is difficult to understand how she could, in her condition, have drifted down to the schooner, where she fell across her bow, doing the damage complained of, and then sinking, with bottom up, where she was found next morning, under the starboard bow of the schooner, by her master.

There was no storm or unusual wind blowing at the time of the accident. Witness Partin said that there was a southeast wind blowing at the time he left the barge moored, about 5 or 6 o'clock on the evening preceding the accident. The barge was made fast with two lines, one about 2 inches in size, the other a little smaller. One was made fast to the piling, the other to the stringer at the top of the piling, and this one pulled the stringer loose, which would indicate quite a strong line. The barge had a slack line to allow for the rise and fall of the tide. She was not tied tight against the wharf. He stated that he did no know what happened after that, and did not know what the wind was about 12 o'clock that night. The master of the schooner, a witness, stated that at the time of the collision there was a light wind from the northeast. There is some conflict in the evidence as to the place where the barge turned over—whether at or near the place where she was moored, or about 75 feet distant from where the collision actually occurred. Witness Partin stated that the barge had pulled the stringer on the wharf loose, and sprung the piling out from the wharf, at the time she broke away from her moorings. Of course, he did not see this occur, for he was not present. This was his opinion, or supposition, based on what he saw next day, when he visited the place, and the tide was down. He, however, stated that the tide was rising slowly at the time he moored the barge, but that it was not high. It is possible the piling referred to might have been covered by the tide sufficiently to hide it from view.

There was no expert or positive evidence as to when the tide began to rise or to fall, or as to the condition of the tide that night, whether high, medium or low. There were some facts and circumstances tending to show that some time during the night the tide was high; at least sufficiently high to carry the barge over a pile which was near the side of the slip, the top of which was bearing out from the wharf. Partin, who moored the barge, testified that he saw no such piling when he moored the barge.

It is not necessary that the accident should be the result of a vis major. Where no fault can be shown, the accident may be said to be inevitable. The Jumna et al. (2 C. C. A.) 149 Fed. 171, 172, 79 C. C. A. 119. There is nothing in the evidence of any specific fault, act, or omission which shows how the barge got adrift, and to which is attributable the act of collision. As said by the court in The Jumna et al., supra:

"Fault may exist, but we are unable to discover it; it is inscrutable. Where the evidence is so conflicting that it is impossible to determine to what direct and specific acts the collision is attributable, it is a case of damage arising from a cause that is inscrutable. * * * Whether the case at bar be thus classified, or whether it be held to come within the admiralty definition of inevitable accident, is not material; in either event the loss must be borne by the party on whom it falls. * * * The question has now been definitely decided by a vast preponderance of authority that there can be no recovery or partial recovery unless fault is affirmatively shown." The Jumna, supra, and numerous authorities cited in the opinion.

There is nothing really to support the libelant's charge of negligence, except the presumption arising from the accident itself. It only establishes a prima facie case in favor of the libelant, which, in my opinion, the claimant has fully met by the evidence in the case. The Kathryn B. Guinan, 176 Fed. 301, 99 C. C. A. 639.

The libel is dismissed.